No. 83-251

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

KATHRYN L. WYMAN, individually and
KATHRYN L. WYMAN and KAREN W. BAGEMAN,

Plaintiffs and Appellants,

-vs-

HORACE C. WYMAN, Trustee, and G.
KENNETH ALLEN & GLADYS K. ALLEN,
d/b/a MOTOR POWER EQUIPMENT CO.,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Wright, Tolliver & Guthals, Billings, Montana

For Respondents:

Berger Law Firm; Arnold Berger, Billings, Montana
Moulton Law Firm; B. E. Longo, Billings, Montana

---

Submitted on Briefs: November 3, 1983

Decided: January 26, 1984

Filed: JAN 26 1984

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Kathryn Wyman and Karen Bageman appeal a summary judgment entered against them in the District Court for the Thirteenth Judicial District, Yellowstone County. We affirm the District Court.

In August of 1956, Horace and Kathryn Wyman, then husband and wife, entered into a lease agreement with G. Kenneth and Gladys Allen. The Allens became lessees of real property located in Yellowstone County, a portion of which was owned by the Burlington Northern Railway and leased to the Wymans. The lease between the Wymans and the Allens had a primary term of ten years with three consecutive three-year options for renewal. The lease also prescribed a penalty of double rental as liquidated damages, in the event the lessees held over.

In 1964, Horace and Kathryn Wyman were divorced. The real property that was the subject of the lease agreement was transferred to a trust, for the benefit of Horace Wyman and Kathryn Wyman. Both Horace and Kathryn were made trustees, along with their daughter Karen Bageman.

The trust agreement provided that the expenses of operation and maintenance of the trust were to be paid with checks co-signed by Horace Wyman and Kathryn Wyman. Two of the three trustees could revoke the trust, as well as borrow money for expenses and taxes. The final paragraph of the trust agreement read as follows:

> "7. Generally speaking, the aforementioned Horace C. Wyman shall have general charge of the operation of the business, and shall receive no fees or additional compensation therefor. In addition to the obligations hereinbefore set forth, the said Horace C. Wyman shall be

- 2 -

> obligated to report, at least quarterly,
> to the aforementioned Kathryn L. Wyman,
> of all receipts and expenditures of the
> trust."

Although the lease was executed in August of 1956, the Allens did not take possession until February 1, 1957. Following the initial ten-year period of the lease, the three options for renewal were exercised, extending the lease period to January 31, 1976. According to Kenneth Allen, the renewals were exercised by his writing letters to Horace Wyman, notifying Wyman of the extension.

During the early months of 1975, Horace Wyman and Kenneth Allen discussed modifying and extending the leasehold arrangement. They agreed that the terms of the leasehold should remain the same as before, with a raise in rent of $400, for a term of three years. In his answers to interrogatories, Horace Wyman stated that according to his recollection, a new lease agreement with the above provisions was drafted, dated February 1, 1975, and sent to Kathryn Wyman. In addition, Horace Wyman's attorney, in an affidavit, claimed that he and Horace Wyman met and went over the modifications of the lease agreement. The modified document was given to Wyman's attorney's secretary for typing. Shortly thereafter, the attorney had a meeting with Kenneth Allen at which time he reported to Allen that the lease was being prepared, along with manila envelopes to be used to send the lease to Kathryn Wyman and Kenneth Allen. Kathryn Wyman testified that she never received a new lease agreement.

The Allens paid the increased rent starting in February 1975 and Kathryn Wyman received her portion of the payments. She also continued to co-sign the checks paying Burlington Northern an increased rent for the portion of the property

subleased to the Allens, such increase required after 1974. Karen Bageman was also aware of the increased rental payments by the Allens. She testified that, between 1976 and 1980, she asked Horace Wyman numerous times what was taking place with regard to the rental property. He allegedly answered that a new lease was being drawn and that everything was being taken care of. Both Karen Bageman and Kathryn Wyman claim that they were misled by Horace Wyman's assurances.

In November 1977, the Allens wrote to Horace Wyman, advising him that they wished to renew the lease for another three-year period from February 1, 1978 to February 1, 1981. Horace Wyman wrote back on January 31, 1978, saying, "The original lease provided you an option to request a three year extension and this letter is to inform you that such extension is hereby granted." Again, it was asserted in interrogatories that Horace Wyman was acting under the assumption that a new lease had been executed.

In March of 1980, Karen Bageman and Kathryn Wyman sent a letter to G. Kenneth Allen informing him that "henseforth any matters related to the term and lease payments of your tenancy must be previously approved, in writing, by any two of the three trustees, who as you know, are Horace Wyman, Kathryn Wyman and Karen Bageman." The letter noted that the original lease, with all available extensions, expired in August of 1975 and that no current written executed lease agreement existed. The authors assumed that Kenneth Allen was not a party to a newly-written and executed lease and as of August 6, 1975, was "a tenant under an oral agreement with Horace." The letter ended with the statement that: "If any of the facts assumed above are incorrect, please advise us accordingly so we can determine the true status of your tenancy."

- 4 -

By a letter dated September 17, 1980, Karen Bageman and Kathryn Wyman's attorney notified the Allens' attorney that the former:

> "deem Mr. Allen to have materially breached the lease agreement entered into between himself and Horace and Kathryn Wyman on August 6, 1956, for his failure, following the expiration thereof, to pay the holdover rental provided for in that document. I am writing to further advise that should Mr. Allen be basing his present tenancy of the property in question upon any writing other than the original 1956 lease, that writing is void as having been executed by only one of two trustees required to bind the trust."

On November 25, 1980, Kathryn Wyman and Karen Bageman filed a complaint in the District Court charging (1) breach by Horace Wyman of his fiduciary duties, making him liable for damages; (2) breach by G. Kenneth and Gladys Allen of the 1956 lease agreement, making them liable for damages; and (3) unlawful detainer of the property by the Allens. Horace Wyman answered and counterclaimed to recover damages arising from the actions of the plaintiffs. The Allens answered and counterclaimed to recover damages, asserting breach by the plaintiffs of their duties as trustees.

The Allens vacated the premises on January 30, 1981.

Motions for summary judgment filed by the defendants were granted and findings and conclusions were filed March 10, 1983. Before the court were depositions of G. Kenneth Allen, Karen Bageman and Kenneth Wyman, and answers to interrogatories given by Horace Wyman. The court found that all the negotiations regarding the leasehold extensions were between Horace Wyman and Kenneth Allen and that by agreement between Horace Wyman and the Allens, the lease was modified and extended on February 1, 1975. The rental payments through January 30, 1981, were made with the "knowledge" and

"consent" of, and were "acknowledged and accepted" by all of the trustees. The court concluded, inter alia, that (1) Horace Wyman had the authority under the trust instrument to extend the leasehold agreements; (2) the plaintiffs waived any objection to the extension; (3) the plaintiffs were estopped from claiming unauthorized actions by Horace Wyman; and (4) the plaintiffs ratified the extensions by their "conduct in receiving and accepting all of the benefits thereof."

The appellants raise the following issue on appeal: Did the District Court err in granting summary judgment where there was a question as to whether the term of the lease was properly extended by Horace Wyman.

Kathryn Wyman and Karen Bageman contend that Horace Wyman had no authority to unilaterally modify or extend the lease, given the fact that both Kathryn and Horace signed the original lease. The trust agreement gave all three parties to the agreement authority over the real property, to be exercised by two of the three. As to the summary judgment, Kathryn Wyman and Karen Bageman feel there is an unresolved issue as to whether Horace Wyman had authority to extend the lease agreement without the consent of one of the other trustees. They claim there was no waiver or acknowledgement of Horace Wyman's acts on their part, as they were unaware of their exact nature.

Horace Wyman claims specific authority, granted in the trust agreement, to extend and modify the lease with the Allens. He contends that his acts were consistent with previous practice, as he had always negotiated the lease arrangements with the Allens (including the extensions of the original lease). The acceptance of the rental checks by

- 6 -

Kathryn Wyman past the acknowledged end of the original lease constituted ratification by Kathryn Wyman of his actions. He argues that Kathryn Wyman and Karen Bageman are now estopped from claiming improper acts by him.

The Allens contend that the intent of the trust agreement was to give Horace Wyman charge of the operation of the trust, including the authority to lease the property. Furthermore, any protests by the other trustees at this point should not be persuasive, given the apparent ratification of Horace Wyman's acts. The Allens feel protected from Kathryn Wyman and Karen Bageman's claims by the fact that they did not know the trust existed.

It is undisputed that the language of paragraph seven of the trust agreement gave Horace Wyman general charge of the operation of the business. We are not to second guess the intentions of the parties when the language of the instrument is clear. Section 28-2-905, MCA; Spraggins v. Elvidge (Mont. 1981), 625 P.2d 1151, 38 St.Rep. 493. We must give effect to the parties' intentions, as evidenced by the words used, the nature of the instrument, and the surrounding circumstances. Mathis v. Daines (Mont. 1982), 639 P.2d 503, 39 St.Rep. 73. Thus, upon examination of these factors, we find the language in this trust agreement to be dispositive of whether Horace Wyman had the authority to modify and extend the lease with the Allens. The language clearly expresses the intention of the parties to allow Horace Wyman to continue to handle the "business" which in this case is the lease of the property. The fact that both Kathryn and Horace Wyman signed the original lease is not dispositive of this issue. The circumstances, not the least of which was the marital status of the

- 7 -

parties, had changed since that time and the trust agreement reflected those changes.

It is also undisputed that, prior to the expiration of the original lease, Horace Wyman and Kenneth Allen agreed to increase the amount of the rental payments and extend the leasehold period. Both Kathryn Wyman and Karen Bageman testified that they knew of the increased payments. There was a period of time from the end of the original lease (by any calculation) to March 1980, approximately three years, during which Kathryn Wyman and Karen Bageman took no affirmative action. They allegedly made numerous requests of Horace Wyman, but did nothing to gain more positive answers to their questions. By such inaction, they ratified the lease extensions. In Audit Services, Inc. v. Francis Tindall Const. (1979), 183 Mont. 474, 477-78, 600 P.2d 811, 813, this Court found:

> "Section 28-2-304, MCA, states:
>
> "'Ratification of contract void for want of consent. A contract which is voidable solely for want of due consent may be ratified by a subsequent consent.'
>
> "Ratification may occur in either an express oral manner or solely by means of personal conduct.
>
> "Ratification is a form of equitable estoppel and ordinarily is applied strictly in an agency context, whereby a principal approves the unauthorized act of an agent. See Larson v. Marcy (1921), 61 Mont. 1, 201 P. 685. However, it is also applied in varying classes of cases including contracts. Generally, contract ratification is the adoption of a previously formed contract, notwithstanding a quality that rendered it relatively void and by the very act of ratification the party affirming becomes bound by it and entitled to all the proper benefits from it. Shagun v. Scott Mfg. Co. (8th Cir. 1908), 162 F. 209, 219. The contract is obligatory from its inception and may be signified from the commission or omission

- 8 -

of acts. East Cent. Okl. Elec. Coop.,
Inc. v. Oklahoma G. & E. Co. (Okl. 1977),
505 P.2d 1324, 1329.

"Montana case law also has held that the
subsequent recognition of a contract is
the equivalent of ratification. This
Court has stated:

"'"Ratification" is defined to be the
confirmation of a previous act done
either by the party himself or by anoth-
er. (Citing authority.) And a confirma-
tion necessarily supposes knowledge of
the thing ratified. (Citing authority.)
It follows that to constitute a ratifica-
tion there must be an acceptance of the
results of the act with an intent to
ratify and with full knowledge of all the
material circumstances.' Koerner v.
Northern Pac. Ry. Co. (1919), 56 Mont.
511, 520, 186 P. 337, 340.

"It is the manifestation of the ratifying
party which controls. The respondent's
outward expressions and actions judge of
his intention and his intent in the case
sub judice is clear."

There can be no doubt that Kathryn Wyman and Karen

Bageman knew that the lease arrangements had changed, at

least in terms of the monthly payments, and that the payments

continued well past the term of the original lease. Kathryn

Wyman accepted her portion of the payments without protest.

Both she and Karen Bageman were satisfied with Horace Wyman's

answers for approximately three years. Such conduct is

consistent with ratification, not rescission of the contract.

They cannot now claim that Horace Wyman and Kenneth Allen's

lease agreement violates the trust agreement.

Rule 56(c), M.R.Civ.P. requires that a motion for summa-

ry judgment be granted only if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."

We affirm the District Court's grant of summary judgment as the alleged unresolved issues do not relate to material facts, or are resolved according to our determination that Horace Wyman had the authority to extend the lease. As a matter of law, the defendants were entitled to a summary judgment.

_____
                Justice

We Concur:

_____

_____

_____

_____
        Justices