**Raul NOGUERAS**

v.

**Song LING et al.**

**No. 95–394–M.P.**

Supreme Court of Rhode Island.

June 3, 1998.

Patrick T. Conley, Jr., Paul Nogueras, for Plaintiff.

Robert J. Cosentino, Providence, Andrew R. Gold, Warwick, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This is a real estate wrangle over an agreement to buy a three-bedroom house in Providence. The parties were supposed to proceed to a closing a long time ago, but for reasons that are still unresolved, they have failed to do so. Because the buyers and the seller are pointing fingers at each other for creating this snafu and because the evidence is disputed in regard to which of them is at fault, summary judgment was not the proper way to determine this controversy. Accordingly we reverse and remand this case for further proceedings.

## Facts and Travel

On July 20, 1985 defendants, Song Ling and Sceur Ly Ling (the Lings), entered into a purchase-and-sale agreement (contract) whereby plaintiff-owner, Raul Nogueras (Nogueras), agreed to convey to them a three-bedroom house and certain real estate located at 150 Linwood Avenue (the property) in the city of Providence. The Lings agreed to pay Nogueras $33,000 for the property, and they deposited $6,800 toward the purchase price with either Nogueras or the broker, Buy–Rite Real Estate. The parties set and extended a closing date several times and ultimately rescheduled it for May 23, 1986. However, Nogueras and his attorney refused to attend the closing and failed to convey title to the Lings. The Lings thereafter filed suit in the Providence County Superior Court (docketed No. PC 86–3400, hereinafter 86–3400), seeking specific performance of the contract. In due course a justice of the Superior Court sitting without a jury tried the case and found as a matter of fact that Nogueras had refused to perform the contract and that the Lings had been diligent, ready, willing, and able to proceed with the closing on the agreed-upon date. Accordingly, after ruling in favor of the Lings and against Nogueras on all claims, the court granted the Lings' prayer for specific performance and entered a judgment on June 28, 1993 that ordered Nogueras to transfer the property to the Lings for $33,000 minus the $6,800 deposit.

Notwithstanding this determination, over the next year and a half the specific-performance judgment remained executory: Nogueras never transferred the deed to the premises, nor did he return the Lings' deposit; and the Lings never paid the balance of the $33,000 consideration to Nogueras.

On January 19, 1995 Nogueras filed an independent action in the Superior Court (docketed No. PC 95–302, hereinafter 95–302), seeking removal of a lis pendens that the Lings had filed in the land evidence records with respect to their claim to the property. Nogueras alleged in his complaint that despite the earlier specific-performance award the Lings had refused to close on the property or to tender the balance of the

purchase price to him. Hence Nogueras requested either that the court order the closing to be held or, in the alternative, that it remove the lis pendens and clear the Lings' claim from the title.

Thereafter the Lings filed a motion on July 18, 1995 in the original action (86–3400) to adjudge Nogueras in contempt of the specific-performance judgment. On November 21, 1995, the Superior Court justice who had ruled on the Lings' specific-performance lawsuit ordered the contempt motion held in abeyance pending resolution of Nogueras' action in 95–302. On June 20 and 23, 1995, another Superior Court justice heard Nogueras' motion for summary judgment on his complaint to vacate the lis pendens and to obtain clear title to the property. After reviewing the parties' affidavits and hearing arguments of counsel, the hearing justice granted the motion and ordered the lis pendens discharged. As grounds therefor the hearing justice stated in her bench decision that she was "deciding that this property has been clouded too long. The issue of specific performance is dead. Your client [the Lings] apparently abandoned the right they obtained from the Superior Court in the '86 filing. They are not seeking any longer to buy this property, as I see it. They did not take reasonable steps that were legally available to them to get title to the property; therefore, the time has come to remove the lis pendens, [and to] clear title." However, soon after granting summary judgment to Nogueras, the hearing justice entered an order stating that she would allow the Lings to file a counterclaim seeking restitution of their deposit moneys.

The Lings then filed a petition for a writ of certiorari with this Court, seeking review of the hearing justice's grant of summary judgment to Nogueras. We issued the writ so that we could review the summary judgment.

### Analysis

■ Our scrutiny of an order granting summary judgment employs the same standard used by the motion justice. Viewing the evidence in a light most favorable to the nonmoving party, we examine the record, including the pleadings and any affidavits or discovery materials, to determine whether any material facts remain in genuine dispute such that the case should proceed to trial and to determine whether the moving party is entitled to judgment as a matter of law. *Sjogren v. Metropolitan Property and Casualty Insurance Co.*, 703 A.2d 608, 610 (R.I. 1997).

We first note that Nogueras, the party who moved for summary judgment, failed to file a brief in this matter after we issued the writ of certiorari. Rule 16(b) of the Supreme Court Rules of Appellate Procedure mandates that a respondent file a brief as required by subparagraph (a) of the rule. That provision cautions that "points not made ordinarily will be treated as waived and not be considered by the court." Especially pertinent to a petition calling into question a grant of summary judgment, Rule 16(a) specifies that

"[i]n cases where it may be necessary for the court to examine the evidence, the party shall specify in his or her brief the leading facts which the party deems to be established by the evidence, with a reference to the pages of the record and the appendix where the evidence of such facts may be found, which references will be relied upon by the court in its consideration of such facts. Ordinarily the court will not consider evidence not referenced in conformity with this subdivision."

■ Nogueras' counsel requested at oral argument that we accept a memorandum he had submitted in opposition to the Lings' petition for a writ of certiorari in lieu of the brief required by Rule 16. Because of the untimeliness of this request, we decline to do so. However, even were we to consider this memorandum, we would still conclude that summary judgment was inappropriate in this case.

In support of his motion for summary judgment, Nogueras filed with the Superior Court his own affidavit. There he alleged in pertinent part that "by and through my attorneys, I have offered to schedule a closing for the transfer of said property on several occasions and have never received a response. * * * That by and through my present attorney, I have contacted Defen-

dants [*sic*] present attorney again requesting to schedule a closing and have not received a response. * * * That at no time from the rendering of the Decision [in 86–3400] to the date of this Affidavit have the Defendants agreed to a closing on the property or tendered payment for the transfer of said property." Nogueras did not indicate how or precisely when he or his attorneys made such offers or contacted the Lings or their attorneys. And his affidavit does not indicate whether the offer or offers referenced in the first clause quoted above were ones that Nogueras merely communicated to his own attorneys in the hope that they would then contact the Lings or whether those offers were relayed directly to the Lings. Nor does the affidavit state on his own personal knowledge whether any request he may have made to schedule a closing was in fact ever communicated to the Lings or to their attorneys. At oral argument counsel for Nogueras averred that a certain letter had been attached to the Nogueras affidavit that proved that Nogueras or his attorneys did in fact contact the Lings or their attorneys. However, no such letter appears in the record, nor have the parties provided us with a copy.

In opposition to the motion for summary judgment, the Lings submitted the affidavit of Song Ling, which averred, inter alia, that "Plaintiff's attorneys have ignored and/or refused to close on said transfer of the property and have ignored and/or refused to tender the two (2) deposits given by the Defendants. * * * That the Plaintiff has neglected said property and as a result thereof, the property is in disrepair and no longer worth the original purchase price."

We are of the opinion that these two affidavits and the record as a whole demonstrate that disputed issues of material fact exist concerning whether the lis pendens should be removed, whether the Lings have abandoned their rights to specific performance, and whether the Lings should be estopped from enforcing the specific-performance judgment. First, a disputed issue of fact exists in regard to whether, when, and in what manner either side contacted the other or otherwise acted in good faith in attempting to schedule a closing date to effectuate the judgment and order of the Superior Court in the earlier action. Nogueras claims that through his attorney he has offered to schedule a closing on several occasions but has not received a response; but the Lings contend that Nogueras' attorneys have ignored or refused to close on the transfer of the property. This appears to us to present a classic factual dispute that should not be resolved on summary judgment by preferring one affidavit over the other.

Second, the Lings claim that Nogueras has neglected the property, that it has fallen into disrepair, and that it is therefore no longer worth the contract price. If true, these facts may also have some bearing on whether the property should still be transferred as originally decreed.

Finally, the Lings argued at the summary-judgment hearing that lifting the lis pendens would leave them unable either to enforce their specific-performance judgment or to recover the deposits they made on the property. The hearing justice apparently did not consider whether this alleged prejudice militated against lifting the lis pendens. Although we express no opinion on the merits of this question, we believe that this remains an important consideration that should be factored into any ultimate resolution of this litigation. Accordingly we are of the opinion that the granting of summary judgment was improper in these circumstances.

In addition, because of the relationship between the issue of whether Nogueras is in contempt of the specific-performance judgment in the earlier lawsuit (86–3400) and whether the lis pendens should be vacated as requested in the later-filed action (95–302), we conclude that both issues—together with the return-of-the-deposits question—should be decided by a single justice of the Superior Court. Therefore, upon remand we direct that 95–302 be consolidated with 86–3400 and that the Lings' pending motion to adjudge Nogueras in contempt of the 86–3400 judgment and Nogueras' complaint to clear title to the property in 95–302 be decided in the same action, preferably by the same trial justice who entered the specific-performance judgment in 86–3400.

### Conclusion

For the foregoing reasons the defendants' petition for certiorari is granted, and the summary judgment below is quashed. The papers in the case shall be remanded to the Superior Court with our decision endorsed thereon for further proceedings consistent with this opinion.