## RHODE ISLAND DEPOSITORS ECONOMIC PROTECTION CORPORATION

v.

## MAPLEROOT DEVELOPMENT CORPORATION et al.

No. 98–29–M.P..

Supreme Court of Rhode Island.

July 8, 1998.

William M. Dolan, III, Providence, Jeffrey C. Screck, for Plaintiff.

Jerry H. Elmer, David A. Wollin, Providence, Joseph A. Kelly, Boston, MA, Anthony F. Muri, Providence, Donna Evans, Patrick Sharkey, Robert Popeo, Boston, MA, Richard W., MacAdams, Providence; Laurence Field; Shannon Gilheeney, North Kingstown, for Defendants.

Before BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

When a nontestifying expert has been engaged by a party in anticipation of actual or contemplated litigation, can an opposing litigant who is seeking discovery of the facts known and opinions held by that expert avoid the applicable, rule-based discovery restrictions on obtaining such information merely because the expert has also provided services to the hiring party on other litigation-related cases and matters? We answer this question in the negative and hold that the existence of other litigation matters for which a nontestifying expert has been retained or for which the expert also provides services to that party does not allow another party to the litigation to obtain discovery of the facts known and opinions held by that expert.[1] As long as the expert has in fact been specially employed or retained by the party in anticipation of litigation or in preparation for trial of those other litigation matters and as long as the expert is not expected to be called as a trial witness in the case in which the discovery is being sought, the qualified discovery privilege of Rule 26(b)(4)(B) of the Superior Court Rules of Civil Procedure is applicable and the "facts known and opinions held" by that expert are not discoverable under the rules absent "a showing of exceptional cir-

---

1. Rule 26(b)(4)(B) of the Superior Court Rules of Civil Procedure drastically curtails the ability of a litigation party to obtain discovery of "facts known and opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial." Such facts and opinions can be discovered *"only* as provided in Rule 35(b) [permitting discovery of expert reports pursuant to court-ordered physical or mental examination] or upon a showing of exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject by other means." Super. R. Civ. P. 26(b)(4)(B). (Emphasis added.)

cumstances" not established here or "as provided in Rule 35(b)" (permitting discovery of an expert's report of a physical or mental examination ordered by the court).

## Facts and Travel

This controversy arises from two consolidated actions maintained by petitioner, Rhode Island Depositors Economic Protection Corporation (DEPCO),[2] against respondents Mapleroot Development Corporation and others (Mapleroot) to recover on a promissory note that DEPCO had acquired from the receiver of Marquette Credit Union, one of the financial institutions that failed during Rhode Island's banking and credit-union crisis. Both DEPCO and Mapleroot thereafter undertook certain settlement negotiations. According to Mapleroot, the parties were on the verge of consummating an agreement when DEPCO rejected the work-out ar-

rangements. Mapleroot blames one Mark Cheffers (Cheffers), an accountant hired by DEPCO, for putting the kibosh on the proposed settlement. Cheffers allegedly recommended to DEPCO that it reject the proposed deal because such an arrangement with Mapleroot would have an adverse impact upon a variety of other DEPCO litigation matters on which Cheffers was working as a nontestifying expert. Ultimately DEPCO declined to settle the Mapleroot case. Mapleroot responded by filing a counterclaim alleging that DEPCO improperly refused to consummate the settlement. To support this counterclaim, Mapleroot sought to depose Cheffers and requested that DEPCO produce a broad range of documents relating to the promissory note at issue and to Cheffers' involvement in the aborted settlement process.[3] Objecting to these discovery requests,

2. Created in the aftermath of Rhode Island's banking and credit-union crisis, DEPCO is a public corporation charged with the mission of "providing stability for financial institutions, promoting the welfare of the people of the state, and improving the economic welfare of the people of the state." G.L.1956 § 42–116–2(d); *see also Rhode Island DEPCO v. Mapleroot Development Corp.*, 710 A.2d 167, 169 (R.I.1998); *Rhode Island DEPCO v. Brown*, 659 A.2d 95, 98–99 (R.I. 1995), *cert. denied sub nom. Ernst. & Young v. Rhode Island DEPCO*, 516 U.S. 975, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995); *In re Advisory Opinion to the Governor (DEPCO)*, 593 A.2d 943, 946 (R.I.1991). One of DEPCO's principal functions is the prosecution of litigation against entities who may be liable for contributing to the financial losses caused by Rhode Island's banking and credit-union crisis. *See Mapleroot Development Corp.*, 710 A.2d at 170–71.

3. In pertinent part schedule A, attached to Mapleroot's notice of deposition of Cheffers, requested production of the following categories of documents:

"1. All documents constituting or reflecting communications between DEPCO Investigations [an arm of DEPCO] and other branches or departments of DEPCO (including any individual officers, staff, or administrators) for the period November 1, 1993 to March 31, 1994, addressing or considering the loans which are the subject of these lawsuits (KC 91–1397 and WC 94–219) or addressing or considering the terms of the proposed settlement negotiated between AMRESCO [a DEPCO settlement agent] and the defendants in these lawsuits which proposed settlement was approved by AMRESCO on November 30, 1993.

"2. All documents constituting or reflecting communications between DEPCO Investiga-

tions and AMRESCO (including any individual officers, staff, or administrators) for the period November 30, 1993 to February 22, 1994 addressing or considering the loans which are the subject of these lawsuits (KC 91–1397 and WC 94–219) or addressing or considering the terms of the proposed settlement negotiated between AMRESCO and the defendants in these lawsuits which proposed settlement was approved by AMRESCO on November 30, 1993.

"3. All documents constituting or reflecting any investigations performed by DEPCO Investigations relating in any way to the loans or obligations which are the basis of DEPCO's Complaints in these lawsuits or relating in any way to the individual borrowers, guarantors or obligors of those loans or obligations.

"4. All documents constituting or reflecting any investigations performed by DEPCO Investigations relating in any way to the proposed settlement reached on November 30, 1993 between AMRESCO and the present defendants of the loans or obligations which are the basis of DEPCO's Complaints in these lawsuits.

"5. All documents constituting or reflecting any evaluations performed by DEPCO Investigations relating in any way to the proposed settlement reached on November 30, 1993 between AMRESCO and the present defendants of the loans or obligations which are the basis of DEPCO's Complaints in these lawsuits.

"6. All documents created by DEPCO Investigations between October 1, 1993 and March 31, 1994 addressing, discussing, considering, analyzing, or mentioning both the Adler, Pollock & Sheehan lawsuit (PC 94–5984) and these lawsuits (KC 91–1397 and WC 94–219) or the claims made or issues presented therein.

"7. All documents constituting, concerning, or reflecting any role played by DEPCO Inves-

DEPCO sought a protective order from the Superior Court. In response Mapleroot moved to compel the requested discovery from DEPCO and Cheffers.

In support of its position DEPCO submitted the affidavits of Cheffers and one Peter Barton, a manager at DEPCO responsible for overseeing and supervising DEPCO's investigations into the circumstances surrounding the banking crisis. These affidavits indicated that Cheffers was a forensic accountant and financial consultant who had been engaged by DEPCO in 1993 "as a consulting expert to assist DEPCO and its counsel in investigating the potential claims and lawsuits arising out of the [banking crisis]." The affidavits also established that Cheffers operated "under the general supervision of counsel for DEPCO." Mapleroot countered with no evidence—nor does the record reveal any—that Cheffers' relationship with DEPCO was anything other than what was depicted in the Cheffers and Barton affidavits.[4] Furthermore, as Mapleroot concedes, Cheffers never had any contact with the various parties to the settlement negotiations at the center of this dispute other than his internal dealings and communications with various departments, committees, or individuals affiliated with DEPCO.

Nevertheless, a motion justice of the Superior Court concluded that

> tigations in the consideration by any DEPCO board, committee, officer, staff member, or administrator of the proposed settlement of the loans at issue in these lawsuits negotiated between AMRESCO and these defendants, which proposed settlement was approved by AMRESCO on November 30, 1993 and forwarded thereafter to DEPCO."

4. We note that, after we granted DEPCO's petition for issuance of a writ of certiorari, Mapleroot failed to file a brief in this matter as required by Rule 16 of the Supreme Court Rules of Appellate Procedure and, therefore, it has waived our consideration of points relating to this issue. *See Nogueras v. Ling*, 713 A.2d 214, 216–17 (R.I. 1998).

Nonetheless, our examination of the record reveals that even though Cheffers apparently provided consultation services to a Rhode Island legislative investigative committee (the Select Commission to Investigate the Failure of RISDIC–Insured Financial Institutions) before he joined DEPCO's litigation team in 1993, no evi-

"[i]n the instant matter, the Court is not satisfied that Cheffers' responsibilities were so limited towards the issues of this litigation. On the contrary, it appears that Cheffers was hired in a general capacity to investigate, analyze, and prepare a vast morass of financial information * * *. Since there is insufficient evidence in this Court's opinion to indicate that Cheffers was hired or engaged to respond to *the present matter in particular*, the plaintiff cannot meet its burden in establishing expert status. Thus, the Court is going to deny the plaintiff's motion for protective order." (Emphasis added.)

The motion justice also rejected DEPCO's request for protection from discovery under the work-product privilege set out in Rule 26(b)(3), reasoning that "plaintiff's argument that the documents * * * are protected because they were prepared or compiled by Mr. Cheffers as an expert must fail in light of the Court's analysis and ruling concerning Mr. Cheffers' status [as a nontestifying expert]." For the reasons set forth below, we conclude that the motion justice erred on both counts.[5]

### Analysis

■ Rule 26(b)(4)(B) provides a qualified privilege from discovery for "facts known and opinions held by an expert who has been *retained or specially employed* by another

dence suggests that Cheffers' prior consulting activity is at issue in this controversy. As Mapleroot itself acknowledged in its memorandum to the Superior Court in opposition to DEPCO's motion for a protective order, Cheffers "has been working for DEPCO since October 11, 1993" and he "worked for DEPCO for approximately four years on this and other matters." Thus Mapleroot did not provide the court with any basis to conclude that Cheffers was also a fact witness to any of the matters at issue in this litigation save for his privileged work-product communications in connection with the aborted settlement. Hence, from all that appears in the record, Cheffers' work for DEPCO appears to have been in furtherance of his engagement as a nontestifying expert who was hired in anticipation of, inter alia, DEPCO's professional-liability litigation.

5. We granted certiorari and ordered the parties to appear before a three-judge panel of this Court to show cause why this petition should not be decided summarily. No cause having been shown, we proceed to decide the appeal at this time.

party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial." (Emphasis added.) As applied to this case, the rule precludes such discovery absent a showing of exceptional circumstances by Mapleroot as the party seeking the discovery. Mapleroot does not argue that it even attempted to make such a showing here. Rather, it contends that Cheffers failed to qualify under Rule 26 because he had not been "retained or specially employed" by DEPCO for just this lawsuit.[6]

Swayed by this argument, the motion justice in this case ruled that an expert must be retained or specially employed *only* for the very lawsuit at bar in order to qualify for nontestifying-expert status under the rule. However, we can discern no justification for this crabbed interpretation in either the text or the purpose of the rule, especially when one takes note of the fact that the rule is cast in the disjunctive; that is, the expert must have been "retained *or* specially employed." And there is no express requirement in the rule that the expert's retention be limited just to the lawsuit in which the discovery is being sought. Indeed such a construction would force parties of all sizes and stripes that are routinely engaged in several litigation matters at any given time to hire separate nontestifying experts for each and every litigation case in their portfolio—no matter how related these cases may otherwise be—if they wish to avoid forfeiting the discovery protections accorded to such experts by Rule 26. In our opinion such an unnecessary waste of time, money, and expertise is not required by the text of the rule, nor is it warranted by any of the policies undergirding its creation.

■ Here the fact that Cheffers may have been retained to and did in fact work on a variety of DEPCO litigation efforts (whether or not they were related to the Mapleroot suit) should in no way have disadvantaged DEPCO if it wished to obtain his expert counsel on the advisability of entering into a settlement with Mapleroot. If the advice sought was rendered pursuant to Cheffers' relationship with DEPCO as a nontestifying expert who had been retained to work on such litigation-related matters, if that relationship existed because of DEPCO's anticipated or pending litigation endeavors, and if Cheffers was not expected to testify at any trial with Mapleroot, then Rule 26 barred Mapleroot from obtaining discovery of the facts known and opinions held by such an expert—subject, of course, to a showing by Mapleroot of some exceptional circumstances in "which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Here, as previously indicated, no such showing was made, nor does it appear that information relating to the settlement's rejection could not have been obtained by other means.

Furthermore, even if Cheffers had failed to qualify as a nontestifying expert, the motion justice erred by failing to analyze the discovery requested by Mapleroot with an eye toward whether the discovery-privilege elements of Rule 26(b)(3)'s work-product rule were applicable. Contrary to the stance taken by the motion justice, Cheffers' status as a nontestifying expert vel non would not be dispositive of whether any of the documents that he had prepared constituted protected work-product materials (that is, materials "prepared in anticipation of litigation or for trial"). Rather this determination calls for a completely separate analysis in accordance with the terms of Rule 26(b)(3), not Rule 26(b)(4)(B). In fact, for purposes of the work-product rule, it would not matter whether Cheffers was an expert engaged as

---

**6.** The interpretation of the phrase "retained or specially employed" in Rule 26 has been the source of some disagreement among those courts that have addressed the meaning of this language, which also appears in the Federal rule from which our Rule 26 derives. *See, e.g.,* 8 Charles A. Wright, Arthur R. Miller, Richard L. Marcus, *Federal Practice and Procedure* § 2033, at 463 (2d ed.1994) (noting that with respect to the question whether a regular employee can ever be considered "specially employed," "[i]t may be that no parsing of the rule and Advisory Committee Note will afford a fully satisfactory answer"); *In re Shell Oil Refinery,* 132 F.R.D. 437, 441 (E.D.La.1990) (and cases cited therein) (recognizing fractured authority on the interpretation of this rule); Super. R. Civ. P. 26 comm. notes (Rhode Island rule patterned after Federal model).

an independent expert contractor or was merely a rank-and-file, in-house DEPCO employee providing litigation assistance as requested. *See* Rule 26(b)(3) (extending qualified work-product privilege to documents and tangible things prepared in anticipation of litigation or for trial "by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)").

█ The focus of Rule 26(b)(3) is plainly on whether a litigation-related reason exists for the document's or thing's creation and not on whether the person who created it is an expert or what his or her employment status might be vis-à-vis the hiring party. Although loan documents and other records reviewed or analyzed by Cheffers would not constitute work product merely because he may have reviewed or analyzed them,[7] the litigation-related documents Cheffers may have created as a result of such a review and analysis would appear to qualify for the discovery protections afforded to such materials under Rule 26(b)(3).

### Conclusion

For the above reasons the petition for certiorari is granted, and the orders denying DEPCO's motion for a protective order concerning the taking of Cheffers' deposition and the granting of Mapleroot's motion to compel DEPCO's production of Cheffers' work-product documents are quashed. The papers in the case shall be remanded to the Superior Court with our decision endorsed thereon for further proceedings consistent with this opinion, including the entry of any appropriate protective order or orders vis-à-vis the requested discovery relating to Cheffers and his work product.

WEISBERGER, C.J., and LEDERBERG, J., did not participate.

---

7. Such documents would therefore be discoverable if they are otherwise "relevant to the subject matter involved in the pending action." Super. R. Civ. P. 26(b)(1).