Mary P. MITCHELL et al.

v.

Charles MITCHELL.

No. 98–479–Appeal.

Supreme Court of Rhode Island.

June 28, 2000.

**180**

Anthony F. Cottone, Mark H. Grimm, Providence, for Plaintiff.

Thomas L. Mirza, Rumford, David N. Bazar, East Providence, for Defendant.

Present LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

We face here the propriety of a Superior Court motion justice deciding on summary judgment various questions related to asserted gift-giving and debt-forgiveness among family members. The plaintiffs, Mary P. Mitchell (Mary) and George Mitchell (George), claimed that the defendant Charles Mitchell (Charles)—who is Mary's son and George's brother—had failed to pay certain debts that he owed them. In response, Charles contended that his mother and brother either had forgiven these debts or had given him the money as a gift and that, consequently, they should not be allowed to sue him for nonpayment.

The alleged gifts and debt forgiveness pertained to two different matters: (1) Mary's adding Charles's name to two $40,000 certificate-of-deposit (CD) accounts that she opened and maintained at a local bank and then, together with Charles, pledging these joint accounts to secure Charles's bank loan; and (2) Mary's and George's alleged forgiveness of Charles's $25,000 debt owed to the family trust. After reviewing the facts relating to these disputes and the applicable standard of review, we shall discuss our rationale for sustaining Charles's appeal, vacating the summary judgment, and remanding this case to the Superior Court for trial.

### Facts and Travel

The late Lewis J. Mitchell (Lewis) was the father of Charles and George and the husband of Mary. When Lewis died in 1983, he left a will that established the Lewis J. Mitchell Family Trust (trust).[1] The will named Mary, George, and Charles as cotrustees and cobeneficiaries.

Following Lewis's death, disputes arose between Charles and his mother and brother concerning whether Charles owed any money to Mary and/or to the trust. The first dispute began after Mary added Charles's name in May 1985 to a $40,000 CD account that she alone had funded and maintained at a local bank, and after she opened another joint $40,000 CD account in both of their names at the same bank. Both of these accounts had rights of survivorship for both Mary and Charles. (Mary, however, continued to receive the interest income from these accounts.) In October 1985, in consideration of a bank's lending $72,000 to Charles, both Charles and Mary signed assignment forms that pledged the joint accounts as collateral for this loan. After Charles defaulted on the loan, the bank seized the accounts and used them to liquidate the unpaid loan balance. Mary asked Charles to reimburse her, but he refused, arguing that

---

1. Because of Mary's apparent failure to transfer Lewis's assets into the trust, Charles's attorney stated at oral argument that he also disputed the very existence of a valid testamentary trust. After Lewis's estate satisfied various probate costs, funeral expenses, and creditors, Lewis's will provided that Mary would receive one half of Lewis's estate outright, while the trust would receive the other half, and that Mary would receive the trust's income for her life. Thereafter, upon Mary's death, the trust would make further distributions not in issue here. However, neither the will nor the trust specified which of Lewis's assets should be transferred to Mary and which of his former assets should become trust assets. And the record on summary judgment does not reveal which, if any, of Lewis's assets ever were placed in the trust.

Mary had given him the money in these accounts as a gift. The second dispute concerned Mary's and George's alleged forgiveness of a $25,000 debt due from Charles to the trust, as evidenced by a promissory note that Charles signed after Mary had transferred to Charles certain real estate in Maine.

Both disputes ended up in court when Mary and George sued Charles to recover the money they claimed Charles owed to them. After Mary and George moved for a partial summary judgment with respect to the claims addressing these disputes, a Superior Court motion justice concluded that no genuine issues of material fact existed with respect to Charles's defenses: namely, that Mary's and George's alleged gift-giving and debt-forgiveness in connection with the joint accounts and the $25,000 debt, respectively, barred them from suing· him on these matters. As a result, the motion justice rejected Charles's defenses and entered a partial summary judgment in plaintiffs' favor.[2] Charles has appealed from this judgment.

### Standard of Review

Rule 56(c) of the Superior Court Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In determining whether any genuine issue of material fact precludes summary judgment, the motion justice, like this Court on review, must review the pleadings and other relevant documents in the light most favorable to the nonmoving party. *See Nichols v. R.R.*

*Beaufort & Associates, Inc.,* 727 A.2d 174, 176 (R.I.1999). If no genuine issue of material fact exists, the motion justice should then determine if the moving party is entitled to judgment as a matter of law. *See Superior Boiler Works, Inc. v. R.J. Sanders, Inc.,* 711 A.2d 628, 632 (R.I.1998). The nonmoving party, however, cannot rest upon mere allegations or denials in pleadings, conclusory statements, or legal opinions. *See Doe v. Gelineau,* 732 A.2d 43, 48 (R.I.1999). Also, the court should not pass upon the weight or the credibility of the evidence in its summary-judgment determination. *See Superior Boiler Works, Inc.,* 711 A.2d at 631.

### Analysis

### I

### The Alleged Gift of the Funds in the Collateralized CD Accounts

By February 1995 Citizens Bank (the bank) had acquired the $72,000 loan to Charles, as well as the collateralized joint accounts. The bank soon demanded payment on the loan because, by this date, Charles was more than ninety days delinquent on his loan payments. After Charles failed to respond to the bank's requests for payment, it seized the joint accounts and used the money in them to satisfy the unpaid principal, interest, and penalties due on the loan. The bank then issued a check to Mary and Charles jointly for the small remaining balance in the joint accounts after discharging the unpaid loan balance. Charles swore in an affidavit that he was unaware that the bank had decided to default him on the loan because the bank had sent notice of default only to his previous address, where Mary and George, but not Charles, then were living. Furthermore, even though Charles conceded that he alone was responsible to

---

**2.** Pursuant to the court's ruling, a partial summary judgment entered on Counts I, II, and V of the complaint. Because this judgment disposed of less than all the pending claims, the court thereafter directed that a final judgment enter under Rule 54(b) of the Superior Court Rules of Civil Procedure (al-lowing the court to direct the entry of a final judgment as to one or more but fewer than all of the claims upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment), thereby enabling this appeal to proceed.

repay the loan, he argued that he should not have to reimburse Mary for the money that the bank seized from their joint accounts because Mary had given him the money in these accounts as a gift when she added his name to them, converted them to joint accounts with mutual survivorship rights, and then pledged the accounts as collateral for Charles's bank loan. Unable to obtain reimbursement from Charles, Mary eventually sued him in Superior Court, asserting that she had added Charles's name to her CD accounts merely for "convenience" and that she never intended to give Charles the money as a gift. Thus, she sought a judgment against Charles to recover from him the amount of money she lost when the bank seized the joint accounts to pay off Charles's delinquent loan.

Charles contends that summary judgment was improper because a genuine issue of material fact existed concerning whether Mary had completed an *inter vivos* gift to him of the money in the accounts by converting her CD accounts into joint accounts with him—each person having the right of survivorship—and by pledging the accounts to secure his bank loan. Charles suggests that Mary effectively gave up her sole ownership, dominion, and control over the accounts when she converted them to joint accounts, and thereby completed a valid *inter vivos* gift of the money therein. He insists that, as a result of this joint-account conversion, he acquired an immediate possessory right to the money in the accounts. Mary counters that the money she used to fund the accounts always belonged only to her. She suggests that she added Charles's name to her accounts merely for convenience, and that neither her conversion of the CD accounts to joint accounts with Charles nor her pledge of the accounts as collateral for Charles's bank loan equated to a completed gift of that money to Charles.

■ Recently, we discussed a surviving party's right to the funds in a joint account after the other party has died. In *Robin-*

*son v. Delfino*, 710 A.2d 154 (R.I.1998), we noted that the establishment of a joint bank account with survivorship rights "is *conclusive* evidence of the intention to transfer *to the survivor* an immediate *in praesenti* joint beneficial possessory ownership right *in the balance of the account remaining after the death of the depositor*, absent evidence of fraud, undue influence, duress, or lack of mental capacity." *Id.* at 161 (emphases added). While both parties are still alive, however, the existence of a joint bank account only gives rise to a *rebuttable* presumption of an intent to make a gift of a joint interest therein, albeit the establishment of a joint account is one that "create[s] *immediate possessory* as well as survivorship rights" in both joint-account parties. *Id.* at 160. (Emphasis added.) Thus, in *Bielecki v. Boissel*, 715 A.2d 571 (R.I.1998), we held that the mere addition of a second name to a bank account, thereby transforming it into a joint bank account with a right of survivorship, does not always evidence an intent on the part of the original owner to create any *present* joint ownership rights in the account because "[n]othing said in *Robinson* even suggests that joint bank accounts established for purposes of convenience only are no longer permitted. Neither does *Robinson* proclaim that any right of present ownership in the account funds is transferred in a joint bank account to a person whose name is placed thereon for purposes of convenience only." *Id.* at 574.

■ Rather, in the context of joint bank accounts with a right of survivorship, we adopted in *Robinson* the Ohio Supreme Court's rule in *Wright v. Bloom*, 69 Ohio St.3d 596, 635 N.E.2d 31 (1994), that:

"[i]t would seem that when a depositor opens a joint and survivorship account and executes signature cards which recite that the account is to be paid to either during the depositors' joint lives and to the survivor upon the death of either, a *rebuttable presumption* of an intent to make a gift of a joint interest should arise." *Robinson*, 710 A.2d at

160 (quoting Donald Kepner, *The Joint and Survivorship Bank Account—A Concept without a Name*, 41 Cal.L.Rev. 596, 621 (1953)). (Emphasis added.)

Therefore, a *rebuttable* presumption arose in this case that when Mary converted the CD accounts into joint accounts with Charles, she intended then and there to "make a gift of a joint interest" in the CD accounts' funds to Charles. Here, Charles and Mary were both still living when the Superior Court ruled on this case, yet both claimed a different understanding of Mary's actions in adding Charles's name to the accounts, in converting them to or establishing them as joint accounts with rights of survivorship, and in pledging the joint accounts as collateral for Charles's loan. Whereas Mary's sworn affidavit stated that she established the CD accounts as joint accounts for convenience purposes only, Charles's testimony at his deposition revealed that he believed she intended to give him the money in the accounts as a gift when she established them as joint accounts and pledged them as collateral to secure his bank loan.

Although the mere addition of Charles's name to Mary's CD accounts is not conclusive as a matter of law that Mary intended to give Charles a present joint interest in these accounts, a rebuttable presumption arose that she did so for this purpose. Although Mary's affidavit tends to rebut that presumption, it merely created an issue of fact concerning her intentions in doing what she did. Thus, in cases like this where conflicting evidence of donative intent exists, the trier of fact—not a motion justice—should resolve the contested issue. *See, e.g., Blanchette v. Blanchette,* 362 Mass. 518, 287 N.E.2d 459, 463 (1972).

It may well be that a jury ultimately will reject Charles's contention that his mother intended to give him these joint-account funds as an outright gift, but such a determination is one the fact-finder should make because Mary's actions are subject to different interpretations about her intent. Therefore, the motion justice erred when she granted summary judgment in favor of Mary on this issue.

## II

### The Alleged Forgiveness of Charles's $25,000 Debt to the Trust

In April 1986, Mary transferred a certain parcel of real estate in Maine to Charles in exchange for a $25,000 demand promissory note payable to the trust.[3] Thereafter, in 1987 Mary deeded her house in Warwick to George as a gift, but she received no note or other consideration in return. As George admitted during his deposition, Mary deeded her Warwick property to him "[b]ecause of [Mary's transfer of the property in Maine] that had occurred between [Mary and Charles. Mary's attorney] felt that I [George] had been slighted, and it would be fair and she had the opportunity to basically equal [things] out by giving me something." (The Maine property was apparently worth considerably more than the $25,000 note for which Mary had transferred it to Charles.) A sworn affidavit from one of Mary's close friends, H. Thomas Rowles, stated that Mary admitted deeding the Warwick home to George in 1987 as a way to "even[ ] things up between Charlie and George, her sons."

In June 1991, Mary met with Charles and his wife at their home. Charles alleged in his sworn affidavit that during this visit Mary forgave Charles the $25,000 debt owed to the trust on account of the 1986 transfer of the Maine property. Charles further averred that he understood from this meeting that Mary forgave the debt because she had given George the Warwick home as a gift and, thus, it would not have been fair to require Charles to pay $25,000 for the Maine property while

---

3. The $25,000 demand promissory note was to be paid off within five years at an 8 percent interest rate, with the loan payments beginning on April 1, 1987, in the amount of $5,000 annually. By its terms, the note became fully due on April 1, 1991.

George received the Warwick home free and clear for no consideration at all. Charles further asserted that George, in effect, had agreed to the discharge of his $25,000 trust indebtedness when he accepted Mary's gift to him of the Warwick property and acknowledged that this gift had been an attempt to "equal things out" with him after Mary had transferred the Maine property to Charles. As a result, Charles argued, George should be estopped in his capacity as a trustee and trust beneficiary from suggesting that Charles still should have to pay $25,000 to the trust as evidenced by the promissory note.

In their complaint, Mary and George asserted that Charles had failed to make any payments on the $25,000 note since 1987. Consequently, they demanded repayment of this loan with interest. The Superior Court granted partial summary judgment to Mary and George on the relevant counts of their complaint, and Charles subsequently filed this timely appeal.

In contending that the motion justice erred in granting summary judgment on the note, Charles asserts that a genuine issue of material fact exists concerning whether, by their words and conduct, Mary and George forgave Charles's $25,000 debt to the trust. In his deposition, Charles swore that Mary had visited his home in 1991 and had orally forgiven his repayment of this debt. He also claimed that George's acceptance of Mary's 1987 gift to him of the Warwick property amounted to his tacit approval of the asserted debt forgiveness so that Mary could "equal things out" with Charles's receipt of the Maine property. Mary and George, however, contended that summary judgment was proper on this issue because all trustees must forgive a loan to a trust in order to establish a valid discharge of indebtedness. They argued that George's acceptance of the Warwick home from his

mother did not, as a matter of law, equate to his approval of the alleged debt forgiveness. Indeed, Mary and George asserted that they never forgave the $25,000 debt that Charles owed to the trust.

"The law is well settled that where several trustees are appointed to administer a trust they form one collective trustee, and that any action depending on the exercise of discretion or judgment on the part of the trustees requires the joint action of all." *Angell v. Moni*, 45 R.I. 186, 188, 121 A. 126, 127 (1923). We also agree, however, with the rule that a trustee's actions can constitute his or her implicit agreement to or ratification of an express agreement made by another trustee such that the trustee whose conduct evinced approval may not later claim that the other trustee's alleged agreement was invalid because it lacked the express approval of all trustees. *See Wyman v. Wyman*, 208 Mont. 57, 676 P.2d 181, 184 (1984) (holding that because trustees accepted a number of increased rental payments on a lease, they effectively ratified the lease's renewal and could not declare the renewal invalid for the lack of all trustees' approval of same).

Here, Mary and George point to the fact that no writing exists to support any alleged debt forgiveness, nor was there any consideration alleged to support such a claim. They further argue that Charles produced no evidence that Mary and George, in their capacity as trustees, agreed with or ratified this alleged debt forgiveness. Charles, however, presented deposition testimony, his own sworn affidavit, and the sworn affidavit of his wife that Mary forgave the $25,000 loan during a conversation he had with her in the summer of 1991 in the presence of his wife.[4] And according to H. Thomas Rowles's affidavit, Mary admitted to him that she had transferred her Warwick home to George in 1987 to "even things up" between her sons. Finally, George concededly accepted

---

4. Though Charles could not recall his mother's exact words that caused him to believe that she had forgiven the loan, nevertheless, he and his wife maintained that this was the gist of their conversation with Mary.

Mary's gift to him of the Warwick property in 1987 because he knew that Mary believed this would serve to "even out" his and Charles's share of their father's estate. Thus, in contrast to Mary's and George's denials of any loan forgiveness, the motion justice received deposition transcripts and affidavits of witnesses who averred that Mary had forgiven the $25,000 demand promissory note issued to Charles and that George had accepted Mary's deed of her Warwick home to him as a way for Mary to equalize the property distributions that she had made to her two sons. As we have stated previously, "[t]his appears to us to present a classic factual dispute that should not be resolved on summary judgment by preferring [some] affidavit[s] over * * * other[s]." *Nogueras v. Ling*, 713 A.2d 214, 217 (R.I.1998).

We are of the opinion that these circumstances, viewed in the light most favorable to Charles, created a genuine issue of material fact concerning whether Mary's and George's actions amounted to their forgiving Charles's $25,000 debt to the trust and whether George's acceptance of the Warwick property as a gift estopped him from challenging Mary's alleged debt forgiveness to Charles as part of a way for Mary to "equal things out" with his brother.

The motion justice observed correctly that to survive a summary-judgment motion, the opposing party must present evidence from which a jury could draw reasonable inferences sufficient to create a genuine issue of material fact. *See Gelineau*, 732 A.2d at 47–48. Indeed, Rule 56 of the Superior Court Rules of Civil Procedure, concerning summary judgment, requires that the nonmoving party adduce sufficient controverted evidence of material fact(s)—irrespective of its credibility or weight—to require a trial. *See Superior Boiler Works, Inc.*, 711 A.2d at 631–32. Here, the motion justice ruled that George's "simple statement that this would balance things out," coupled with Charles's deposition testimony in which he answered, "[n]o," when asked whether

George expressly and directly forgave the note, did not amount to "sufficient evidence to draw a reasonable inference that [George] consented to a forgiveness of the note." In our de novo review of the record, we are of the opinion that the above-referenced evidence, combined with the other circumstances noted previously, created a genuine issue of material fact that cannot be resolved without a trial.

■ The function of the motion justice considering a proposed summary-judgment motion is not to cull out the weak cases from the herd of lawsuits waiting to be tried. Rather, only if the case is legally dead on arrival should the court take the drastic step of administering last rites by granting summary judgment. Here, however weak, improbable, or unlikely Charles's assertions of gift-giving and loan-forgiveness may have appeared to the motion justice, they still created genuine issues of material fact concerning whether Mary's and George's actions prevented them from attempting to collect Charles's $25,000 debt to the trust and from requiring Charles to reimburse Mary for the money she had deposited into the CD accounts after the bank seized the money in the pledged joint accounts to liquidate the balance due on Charles's unpaid bank loan.

### Conclusion

For the foregoing reasons, we conclude that Charles demonstrated genuine issues of material fact about whether George's and Mary's alleged gift-giving and loan-forgiveness compromised their entitlement to a judgment against Charles on the $25,000 demand promissory note and on Mary's claim for reimbursement of the money she lost after the bank seized the two $40,000 joint accounts to liquidate Charles's unpaid loan balance. Consequently, we sustain Charles's appeal, vacate the Superior Court's order granting partial summary judgment in favor of

Mary and George, and remand this case for trial on these issues.

Chief Justice WEISBERGER did not participate.