William D. CHAVIS, Petitioner,

v.

Sewell SMITH, Warden,
et al., Respondents.

Civ. A. No. N–91–3731.

United States District Court,
D. Maryland.

Sept. 13, 1993.

James K. Bredar, Federal Public Defender, and Mary M. French, Asst. Federal Pub-

lic Defender, Baltimore, MD, for petitioner Chavis.

J. Joseph Curran, Jr., Atty. Gen., and Richard B. Rosenblatt, Asst. Atty. Gen., Dept. of Public Safety and Correctional Services, Baltimore, MD, for respondents.

## MEMORANDUM

NORTHROP, Senior District Judge.

### I. Introduction

Presently before the Court for consideration is a Petition for Writ of Habeas Corpus filed by Petitioner William Daniel Chavis. On March 13, 1992, this Court referred the instant petition to Magistrate Judge Daniel E. Klein, Jr. for processing and Report and Recommendation, pursuant to 28 U.S.C. § 636 and Local Rule 301 (D.Md.1992). A Report and Recommendation was thereafter issued by Magistrate Judge Klein on May 4, 1993. Respondents have filed a timely objection to the Report and Recommendation to which Petitioner has responded. For the reasons set forth below, the Report and Recommendation will be adopted, and Petitioner's Petition will be granted to the extent recommended therein.

### II. Facts and Procedure

As noted by Magistrate Judge Klein, the facts of this case are "very particular" and have been set forth in detail in the Report and Recommendation. It being that no objections have been raised with respect to this factual recitation, it need not be repeated herein.

At issue in this case is Petitioner's claim that he has been unconstitutionally deprived of a liberty interest by Maryland's failure to credit time spent by Petitioner in a Georgia prison towards a Maryland sentence. The parties also dispute whether Petitioner's claim is procedurally barred by Petitioner's failure to timely appeal the denial of his State habeas petition. In his Report and Recommendation, Magistrate Judge Klein found that an issue of procedural default did not exist because under Maryland law, Petitioner was not required to appeal the denial of his state habeas petition. He thereafter determined that while Petitioner was not en-

titled to the full amount of credit sought, there was reason to recommend that Petitioner be credited for roughly fourteen months towards his Maryland sentence.

Respondents' Objection takes issue as to both of the conclusions made by Magistrate Judge Klein. They maintain first that Petitioner's case is procedurally barred absent a showing of cause and prejudice. Second, Respondents contend that Magistrate Judge Klein erred in finding a liberty interest with respect to the "dead time" served in Georgia where one of Petitioner's Georgia convictions was vacated. Petitioner has responded to both objections.

### III. Discussion

■ Under Fed.R.Civ.P. 72(b), this Court is required to make a de novo review of this case on the record and then accept, reject or modify the Magistrate Judge's Report and Recommendation, as needed. See 28 U.S.C. § 636(b)(1)(B). The Court need only conduct a de novo review of those portions of the Magistrate Judge's Report and Recommendation to which objection is made. See generally United States v. George, 971 F.2d 1113 (4th Cir.1992).

■ The Court first considers Respondents' Objection with respect to procedural default. They argue that the instant Petition for Writ of Habeas corpus does not relate to Petitioner's Maryland convictions nor to the sentence imposed thereunder. As such, they essentially assert that Petitioner's claim for credit for time served in the interim for a Georgia conviction does not represent a challenge to the serving of Petitioner's Maryland prison term. This argument is without merit. The duration of Petitioner's imprisonment is directly affected by the within claim. In the alternative, the Court concurs with Petitioner's argument that were this Court to have made a determination of procedural default, there is ample reason to find that the cause and prejudice standard is satisfied. See generally Murray v. Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Remaining for consideration is Respondents' objection to Magistrate Judge Klein's recommendation that Petitioner be given credit on his Maryland sentence for "dead time" served in Georgia between March 7, 1984 and May 23, 1985. Respondents offer several arguments with respect to the application of Md.Ann.Code art. 27, § 638C and DCR 285–6. This Court, however, agrees with Petitioner that Respondents' interpretation of the Maryland Statute would render it meaningless. The Court also finds that Respondents' argument with respect to DCR 285–6 is without merit.

Accordingly, for the reasons stated above, and based upon a *de novo* review of the instant case, this Court will adopt the May 4, 1993 Report and Recommendation issued by Magistrate Judge Klein.

A separate Order shall enter.

### ORDER

For the reasons set forth in the foregoing Memorandum, IT IS this 8th day of September, 1993, by the United States District Court for the District of Maryland,

ORDERED:

1. That the May 4, 1993 Report and Recommendation issued by Magistrate Judge Daniel E. Klein, Jr. is **ADOPTED;**

2. That Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** to the limited extent recommended by Magistrate Judge Klein in his May 4, 1993 Report and Recommendation;

3. That this case is **CLOSED;** and

4. That the Clerk of Court **MAIL** copies of this Order, together with foregoing Memorandum to Petitioner and all counsel of record.

### REPORT AND RECOMMENDATION

KLEIN, United States Magistrate Judge.

Petitioner William Daniel Chavis, presently incarcerated in the Eastern Correctional Institution, Westover, Maryland, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Paper No. 1.[1] The Court having appointed the Federal Public Defender to represent petitioner, the Public Defender has filed a supplemental brief (Paper No. 14), respondents have filed a response (Paper No. 15), and the Public Defender has filed a reply (Paper No. 16). The facts of this case are very particular. Petitioner asserts that he has been unconstitutionally deprived of a liberty interest by Maryland's failure to credit time spent in a Georgia prison toward a Maryland sentence. Respondents argue that the claim is procedurally barred and, in any event, Maryland law does not support granting such credit. As the issue has been fully briefed, no hearing is deemed necessary. Rule 8 Governing § 2254 Cases. It will be recommended that the petition be granted.

### I. Background

On January 23, 1978, petitioner was sentenced in the Criminal Court of Baltimore to two consecutive five year terms in prison for assault and assault with intent to murder. Petitioner started serving that sentence on July 17, 1977. Petitioner escaped from the custody of Maryland authorities on May 22, 1980 and an arrest warrant issued in the District Court for Anne Arundel County for the crime of escape.

Petitioner's next contact with the criminal justice system was several months later in Georgia under the aliases of Terry Lee Black and Terry Charvis. On October 20, 1980, petitioner pled guilty in the Fulton County Georgia Superior Court to two counts of first degree forgery in Case No. A–51671. He was sentenced to two concurrent terms of four years' probation.[2] On March 7, 1981, petitioner was arrested and charged in Case No. A–54791 in the Fulton County Georgia Superior Court for an armed robbery committed that day. Petitioner was convicted of that charge and on July 2, 1981 he was

---

1. Respondents answered the petition (Paper No. 4). Senior Judge Northrop referred this case to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 301 on March 13, 1992. Paper No. 7.

2. Apparently, Maryland authorities were not aware of petitioner's whereabouts at that time.

sentenced to a term of imprisonment "for and during his natural life." The armed robbery conviction triggered a revocation of probation in the forgery case. As a result, on July 2, 1981, petitioner received two terms of three years' imprisonment to run concurrent to the life sentence.

On August 3, 1981, Maryland lodged a detainer with the Georgia State Board of Corrections on petitioner's pending escape charge.[3] Apparently, petitioner then asserted his rights under the Interstate Agreement on Detainers to resolve the escape charge. Rather than taking temporary custody of petitioner for that purpose, the State's Attorney for Anne Arundel County lifted the detainer on the escape. Instead, the State's Attorney simply lodged an "escape-retake" warrant on December 1, 1981 seeking custody of the petitioner on the remaining Maryland prison term.

During his Georgia incarceration, petitioner was charged in the Tattnall County Georgia Superior Court in Case No. 84–111 with aggravated assault and possession of a deadly weapon while in confinement in a penal institution. He was convicted of those charges and sentenced on May 23, 1985 to six years' and five years' imprisonment, respectively.[4] Those terms, concurrent to one another, were to be served consecutive to any other sentence (*i.e.*, the life term for armed robbery).

After exhausting remedies in the Georgia courts, petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Georgia challenging the constitutionality of his 1981 armed robbery conviction. On January 7, 1987, the District Court granted the writ and ordered petitioner released from his armed robbery conviction if he were not retried within 120 days.[5] Petitioner was not retried for armed robbery.[6] He remained incarcerated in Georgia, however, on the aggravated assault and weapons convictions until May 7, 1990. On that date, the Georgia State Board of Pardons and Paroles conditionally transferred petitioner to Maryland authorities.[7]

Upon petitioner's return to Maryland, he was administratively adjudicated on the escape.[8] Thirty of petitioner's good time credits were deducted, he received 30 days of administrative segregation, and 3,637 days were added to the maximum expiration date of his uncompleted sentence.[9] The Maryland Department of Corrections (DOC) gave petitioner no credit for any time served in Georgia.

On June 20, 1990, petitioner filed a *pro se* state habeas corpus petition in the Circuit Court for Baltimore City. Petitioner alleged that he is due ten years' credit toward his Maryland sentence for time spent in Georgia custody. *See* Paper No. 4, Exhibit 3. The Circuit Court denied the petition on July 27, 1990. *Id.* Petitioner filed an application for leave to appeal to the Court of Special Ap-

---

**3.** Maryland officials attempted to lodge a detainer with the Fulton County sheriff's office on May 18, 1991, but petitioner was no longer in their custody.

**4.** Those crimes are described in *Newsome v. Black*, 258 Ga. 787, 374 S.E.2d 733 (1989).

**5.** The District Court ruled that petitioner had not waived his right to counsel during a custodial interrogation at which he confessed to the crime. Petitioner had sought to speak with an attorney when he was arrested but that request was denied until after he confessed. Paper No. 14, Exhibit 10.

**6.** The District Court issued an Order releasing petitioner from the armed robbery sentence on October 9, 1987. *Id.*

**7.** Petitioner's transfer certificate from Georgia indicates that the maximum expiration date of

his aggravated assault and weapons convictions was May 22, 1991. Petitioner was sentenced on May 23, 1985 to concurrent six and five year terms on each conviction, respectively, consecutive to the life armed robbery term. Thus, in light of the upset of the armed robbery conviction, it is apparent that Georgia credited petitioner time served on the six year term as of the date of his May 23, 1985 sentencing. *See* Paper No. 14, Exhibit 11.

**8.** No criminal charge of escape was prosecuted by Maryland.

**9.** The 3,637 day addition is based on petitioner's absence from Maryland custody from May 22, 1980 to May 7, 1990. Upon return, petitioner's new maximum expiration date was set at August 7, 1997. *See* Paper No. 14, Exhibit 13.

peals on March 26, 1991.[10] The Circuit Court denied the application as untimely on April 23, 1991.

The instant petition was filed in this Court on December 31, 1991.

## II. Issue

Petitioner seeks credit toward his uncompleted Maryland sentence for time spent in Georgia prison. He asserts that a Maryland statute and a Division of Correction regulation give rise to a protected liberty interest. Specifically, he alleges that that liberty interest encompassed a period of Georgia incarceration which was "dead time" (*i.e.*, time spent in prison uncredited to any valid criminal conviction). Procedurally, respondents claim petitioner failed to exhaust his remedies in the state courts. On the merits, respondents argue that Maryland law does not apply to petitioner's Georgia incarceration. While petitioner is not entitled to all the credit he seeks, it will be recommended that he be credited with fourteen months toward his Maryland sentence.

## III. Analysis

### A. Procedural Default

■ Exhaustion of all available state remedies is required before a writ of habeas corpus may be granted by a federal court. 28 U.S.C. § 2254(b); *Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982); *Preiser v. Rodriguez*, 411 U.S. 475, 490, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973). The exhaustion requirement is satisfied by seeking review of a claim in the highest state court with jurisdiction to consider the claim. Exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. 28 U.S.C. § 2254(c).

**10.** Petitioner erroneously sent his application to the Court of Special Appeals and not to the Circuit Court. The application was forwarded to the Circuit Court.

**11.** The UPCPA consolidates "into one simple statute all the remedies, beyond [trial and direct appeal], which are at present available for challenging the validity of a sentence of imprisonment." *Mason v. State*, 309 Md. 215, 217, 522 A.2d 1344, 1344 (1987).

■ Two avenues of post-conviction relief are available in the Maryland courts. The first is through Maryland's Uniform Post-Conviction Procedure Act (UPCPA), Md. Ann.Code art. 27, §§ 645A–645J (1988 & Supp.1991).[11] Claims like petitioner's relating to the expiration date of a sentence, as opposed to claims challenging the underlying validity of the sentence or conviction, are not cognizable under the UPCPA. *Towers v. Director, Patuxent Inst.*, 16 Md.App. 678, 679, 299 A.2d 461, 463 (1973); *Knox v. Director, Patuxent Inst.*, 1 Md.App. 678, 680, 232 A.2d 824, 825 (1967), *cert. dismissed*, 396 U.S. 995, 90 S.Ct. 496, 24 L.Ed.2d 461 (1969); *see* Md.Ann.Code art. 27, § 645A(a)(1) & (e) (1988 & Supp.1991). When a case *is* cognizable under the UPCPA, a petitioner may seek appellate review. Md.Ann.Code art. 27, § 645–I (1988).

■ The second avenue of relief is a petition for a writ of state habeas corpus. "An appeal may be taken from a final order in a habeas corpus case only where specifically authorized by statute." *Gluckstern v. Sutton*, 319 Md. 634, 652, 574 A.2d 898, 906 (citing cases), *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990); *accord Mason*, 309 Md. at 220, 522 A.2d at 1346; *State v. Thornton*, 84 Md.App. 312, 316, 578 A.2d 1212, 1214 (1990). The Maryland appellate courts have identified three types of cases where a statute authorizes an appeal or an application for leave to appeal in a habeas case: where a petitioner asserts the law under which he is held is unconstitutional (Md. Cts. & Jud.Proc.Code Ann. § 3–706 (1989)); in bail cases (§ 3–707); and in extradition cases (Md.Ann.Code art 41, § 2–210 (1990)). *Gluckstern*, 319 Md. at 652, 574 A.2d at 906–07; *Thornton*, 84 Md.App. at 313, 578 A.2d at 1213.[12]

**12.** Section 645A(e) of the UPCPA specifically addresses which habeas appeals are permitted and which are not. It provides, in pertinent part:

No appeals to the Court of Appeals or the Court of Special Appeals in habeas corpus or coram nobis cases, or from other common-law or statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment shall be permitted or entertained.... Provided, however, that nothing in

**157**

Preliminarily, respondents assert petitioner procedurally defaulted his claim by failing to timely note an appeal of his state habeas petition. The argument is meritless because, although leave to appeal was denied as untimely, Maryland law does not provide for such an appeal in any event. The Fourth Circuit has refused to require further exhaustion where a Maryland prisoner raised by state habeas an issue not cognizable under the UPCPA. *Gee v. Director, Patuxent Inst.*, 513 F.2d 814, 815–16 (4th Cir.1975) (*per curiam*). Therefore, petitioner exhausted his state remedies with the filing of his state habeas petition. The denial of his application for leave to appeal the adverse ruling on that petition as untimely is irrelevant.[13]

B. *"Dead Time"*

    1. *Md.Ann.Code art. 27, § 638C*

■ State statutes and regulations can create a liberty interest which is protected by the Due Process Clause of the Fourteenth Amendment. *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); *Meachum v. Fano*, 427 U.S. 215, 226, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976); *Hayes v. Thompson*, 726 F.2d 1015, 1017 (4th Cir.1984); *Gardner v. Beale*, 780 F.Supp. 1073, 1076 (E.D.Va.1991). The State may not arbitrarily deprive that interest when its law contains "the repeated use of explicitly mandatory language" in connection with "specific substantive predicates." *Hewitt*, 459 U.S. at 472, 103 S.Ct. 864; *accord Hayes*, 726 F.2d at 1017; *Gardner*, 780 F.Supp. at 1076.

Section 638C of Maryland Code Article 27 states as follows:

(a) *Credit for time spent in custody before conviction or acquittal.*—Any person who is convicted and sentenced shall receive credit against the term of a definite or life sentence or credit against the minimum and maximum terms or an indeterminate sentence for all time spent *in the custody of any state* county or city jail, correctional institution ... or other agency as a result of the charge for which sentence is imposed ... and the term of a definite or life sentence ... shall be diminished thereby. In any case where a person has been in custody due to a charge that culminated in a dismissal or acquittal, the amount of time that would have been credited against a sentence for the charge, had one been imposed, shall be credited against any sentence that is based upon a charge for which a warrant or commitment was lodged during the pendency of such custody. In all other cases, the sentencing court shall have the discretion to apply credit against a sentence for time spent in custody for another charge or offense.

    \*    \*    \*    \*    \*    \*

(c) *[Credit for time spent in custody under sentence which is set aside]—Person serving multiple sentences.*—A person who is serving multiple sentences, one of which is set aside as the result of direct or collateral attack, shall receive credit against the remaining term of a definite or life sentence or credit against the remaining minimum or maximum terms of an indeterminate sentence for all time spent in custody under the sentence set aside, including credit applied against the sentence set aside in accordance with subsection (a), and the remaining term of a definite or life sentence or the remaining minimum and

---

this subtitle shall operate to bar an appeal to the Court of Special Appeals (1) in a habeas corpus proceeding instituted under § 2–210 of Article 41 of this Code [extradition cases] or (2) in any other proceeding in which a writ of habeas corpus is sought for any purpose other than to challenge the legality of a conviction of a crime or sentence of death or imprisonment therefor, including confinement as a result of a proceeding under Article 31B [defective delinquent proceedings] of this Code.
Md.Ann.Code art. 27, § 645A(e) (1988 & Supp. 1991).

**13.** Respondents cite *Gluckstern* as authority that the Court of Special Appeals would have entertained a timely appeal in petitioner's state habeas case. Paper No. 15 at 2 (*citing Gluckstern*, 319 Md. at 662, 574 A.2d at 911). The argument is a complete non-sequitur. Since, as respondents contend, the claim does not relate to the underlying conviction and sentence, it is cognizable only in habeas. As discussed, habeas appeals in Maryland are limited to those authorized by statute. This case is clearly not one of the three kinds of habeas cases in which an appeal may be sought.

maximum terms of an indeterminate sentence shall be diminished thereby.

\*    \*    \*    \*    \*    \*

(emphasis added). The Court is aware of no Maryland case discussing section 638C(c). Subsection (c) differs from subsection (a) only in that it applies to convictions set aside on direct or collateral attack, and not dismissals and acquittals. Subsection (c) otherwise operates like subsection (a) and applies to time spent in any state's custody.[14]

■ The Court of Appeals interpreted section 638C as a whole and subsection (a) in particular in *Fleeger v. State*, 301 Md. 155, 482 A.2d 490 (1984). The *Fleeger* court stated:

> [A] purpose of the credit statute is the elimination of "dead" time, which is time spent in custody that will not be credited to any valid sentence.... By enacting § 638C(a), the General Assembly sought to ensure that a defendant receive as much credit as possible for time spent in custody as is consistent with constitutional and practical considerations. An obvious corollary is that the General Assembly sought to minimize the amount of dead time. Simply stated, we believe that no legitimate legislative policy is advanced by maximizing dead time or by withholding credit that is due a defendant under the crediting statute.

301 Md. at 165, 482 A.2d at 495. Against that background, it is clear that section 638C mandates Maryland credit for prison time served in any state which is not for any valid criminal conviction. Petitioner's armed robbery conviction was set aside on collateral attack in Georgia. He advances two alternative time periods for the Court to credit toward his Maryland sentence.

Under one theory, petitioner asks the Court to credit his Georgia incarceration from May 18, 1981 to October 9, 1987. May 18, 1981 is the date on which Maryland unsuccessfully attempted to lodge a warrant with the Fulton County sheriff's office.[15] October 9, 1987 is the date the United States District Court in Georgia ordered petitioner released from the armed robbery conviction. Petitioner alleges that on October 9, 1987, the sentence for the crimes committed in prison began to run. Alternatively, petitioner asks the Court to credit him with the period March 7, 1984 to October 9, 1987. March 7, 1984 is the date the three year violation of probation sentence ended. Petitioner is not entitled to credit for either of these periods.

Section 638C creates a liberty interest which is protected by the Constitution. Liberty interest encompasses "dead time." Accordingly, the Court must determine whether and when petitioner was serving dead time. The Court's review reveals that time period to be March 7, 1984 to May 23, 1985. Petitioner was in the custody of Georgia authorities from March 7, 1981 (the date of the armed robbery arrest) to May 7, 1990 (when he was returned to Maryland). The (now invalid) armed robbery conviction triggered a three year violation of probation sentence which ran concurrent to the life armed robbery term. Thus, petitioner served from March 7, 1981 to March 7, 1984 for violation of probation.[16] On March 23, 1985, petitioner was sentenced to concurrent six and five year terms on the crimes committed in prison. Those sentences were to be served consecutive to the life term. Petitioner asserts that those sentences did not begin to run until the federal court ordered release from the life term. Petitioner is mistaken. As evidenced by petitioner's Georgia transfer papers, those terms ran from the March 23, 1985 sentencing until his May 7, 1990 return to Mary-

---

14. Subsection (d) provides that any credit required "shall be awarded by the trial judge at the time of sentencing." An internally consistent interpretation of the statute dictates that sentencing judges award appropriate credit when there *is* a sentencing. Here, there was no new sentencing upon petitioner's return to Maryland. That fact should not prevent application of the credit statute to petitioner's case.

15. Petitioner was no longer in the sheriff's custody on that date and it was not until August 3, 1981 that a warrant was lodged with the proper Georgia authority.

16. In a footnote, petitioner argues that since the armed robbery conviction was invalidated, the violation of probation it triggered must now be invalidated. The argument is not persuasive.

land.[17] With the life term removed, all of the time served in Georgia was credited toward a valid Georgia sentence except for a fourteen month window between the end of one sentence and the beginning of the next.[18]

Respondents raise two wholly unpersuasive arguments for why section 638C does not apply to petitioner. First, they concede that the section would apply if all the Georgia convictions were Maryland convictions. They assert, however, that since Georgia did not credit petitioner for his dead time Maryland should not either. It is axiomatic that the Maryland credit statute would not be applicable in Georgia. The fact that Georgia did not give petitioner credit for dead time cannot preclude petitioner's assertion of his constitutional right to liberty based in Maryland law. Second, respondents argue that Maryland's policy of minimizing dead time does not extend to the relationship between the Georgia sentences. The plain language of section 638C is quite clear that credit is to be given for time spent in any state's custody. Thus, respondents' arguments are without merit.

### 2. DCR 285-6

■ There is a second legal basis to award petitioner Maryland credit for his Georgia incarceration. On July 1, 1978, the DOC promulgated Division of Correction Regulation 285-6 ("DCR 285-6").[19] Former DCR 285-6, titled "Crediting Sentence of an Escaped Prisoner," has been held to create a liberty interest under the Fourteenth Amendment. *Resh v. Galley,* Nos. 91-6666 & -6667, slip op. at 4, 1992 WL 107403 (4th Cir. May 21, 1992) (*per curiam*) (unpub-lished opinion; copy attached) ■; *Redfearn v. Hopkins,* Civil Action No. B-87-1479, slip op. at 3-6, 1993 WL 384944 (D.Md. May 30, 1989).[20] The regulation states in pertinent part:

III. Purpose: To provide policy and procedure entitling an inmate to receive credit against a sentence from which he escaped for the time he/she may have spent incarcerated in a local holding facility after apprehension but before return to an institution of the Division of Correction.

IV. Policy and Procedure:

*   *   *   *   *   *

D. If it is determined that the inmate has spent the time in a local facility pending resolution of the escape charge, he shall be given credit against his existing sentence for the time so spent.

1. Any pre-trial confinement credit due the inmate on a new charge in the State of Maryland may only be granted by the Court under the provisions of Art. 27, Sec. 638C (An.Code of Md., 1976 Repl. Vol.).

E. The period(s) of time for which an inmate is entitled to receive credit shall be computed as follows:

1. All time spent incarcerated in another correctional or detention facility (i.e., county jail, city jail, State or Federal institution, etc.) while in escape status from a Division of Correction institution shall be credited toward the reduction of the sentence(s) the inmate was serving at the time of his escape.[21]

---

17. Georgia calculated the expiration date of those sentences as May 22, 1991. Petitioner was paroled just over a year early. According to the transfer papers, if petitioner were released from Maryland custody before May 22, 1991, he would have had to contact a Georgia parole officer.

18. Theoretically and holding aside the 1985 prison crimes, if the life term had been set aside earlier, petitioner would have been returned to Maryland custody in March 1984. If that had occurred, he would have received credit toward his Maryland sentences for Maryland incarceration. The difference between this hypothetical and the facts of the case then are the crimes petitioner committed during his imprisonment for an invalid conviction.

19. DCR 285-6 was rescinded on May 1, 1985.

20. (Now Chief) Judge Black issued unpublished opinions dated May 30, 1989, 1993 WL 384944, and April 24, 1990, 1990 WL 511308, in *Redfearn.* Both are attached hereto. [Editor's Note: Deleted for purposes of publication.]

21. The few cases involving DCR 285-6 delimit its application. DCR 285-6 does not apply where an escaped inmate serves time in another jurisdiction on valid non-Maryland charges. *Redfearn v. Hopkins,* slip op. at 7 (D.Md. May 30, 1989) (*citing Talbott v. Galley,* Civil Action No. JH-82-2600 (D.Md. Apr. 21, 1983) (unpublished

DCR 285–6 was the basis for granting dead time credit in *Redfearn*. Redfearn, a Maryland escapee, was arrested in Michigan as a suspect in a Michigan crime. *Redfearn*, slip op. at 1 (D.Md. Apr. 24, 1990). Upon Michigan authorities' discovery of Redfearn's escape status, he was arraigned and detained on the outstanding Maryland escape warrant. *Id.* Soon after, Redfearn was indicted and held on a Michigan murder charge. *Id.* During the pendency of the murder charge, the Maryland escape case was dismissed because a governor's warrant had not issued within the statutory period. *Id.* at 7. A fresh governor's warrant was received by Michigan authorities three months later, but the Maryland case was not officially reopened. *Id.* Two-and-a-half years after his Michigan arrest, Redfearn was acquitted of the murder. *Id.* at 2. Only after the acquittal was Redfearn rearraigned on the Maryland warrant. *Id.* at 7–8. Michigan returned Redfearn to Maryland, but he received no Maryland credit for his Michigan incarceration. *Id.* at 2. Dead time credit under section 638C(a) was unavailable to Redfearn as no Maryland warrant was lodged during the pendency of the murder charge, as the statute requires. *Id.* at 6 n. 1.[22] Rather, dead time credit was available under DCR 285–6. The court acknowledged that a Maryland escape case was not officially pending for the entire period of Michigan custody. Nevertheless, (now Chief) Judge Black ruled that Redfearn had satisfied the condition that he was held pending resolution of an escape charge. *Id.* at 8. Thus, DCR 285–6 mandated an award of credit which was consistent with Maryland's legislative policy (codified in section 638C) of minimizing dead time. *Id.* at 6, 8.

As to the application of DCR 285–6, at least, the facts of petitioner's case are not as complex as those in *Redfearn*. Petitioner was incarcerated while in escape status from Maryland pending resolution of an escape case.[23] Fourteen months of the time petitioner served in Georgia prison was dead time. DCR 285–6 created a liberty interest entitling petitioner to credit for that time. By contrast, petitioner is not entitled under DCR 285–6 to credit for *all* the time he served in Georgia, although the regulation could be read that way. In *Resh v. Galley*, a Maryland escapee sought "double credit" under DCR 285–6 (*i.e.*, credit toward a Maryland sentence for time spent serving a valid foreign sentence). In an unpublished opinion, the Fourth Circuit ruled credit was properly denied because otherwise inmates would receive a windfall when the purpose of the regulation is simply to minimize dead time. *Resh v. Galley*, slip op. at 4–5; *see also Redfearn*, slip op. at 7 n. 2 (D.Md. May 30, 1989) (DCR 285–6 does not apply to time spent on valid foreign sentence).

### IV. Conclusion

Accordingly, for the foregoing reasons, it is recommended that upon the expiration of time for taking exception to this report, the

---

opinion)); *but see Resh*, slip op. at 4–5 (DCR 285–6 permits, but does not require, credit toward a Maryland escape conviction for time served on a valid conviction in another jurisdiction). On its face, DCR 285–6 contains no language limiting its application to cases in which a Maryland escapee is held solely on an escape charge, as opposed to where the escapee is held on the escape charge and on a separate charge for which he is later acquitted. *Redfearn v. Hopkins*, slip. op. at 5 (D.Md. Apr. 24, 1990). While an escapee cannot get credit toward an escape sentence under section 638C(a) for time spent in custody before the escape trial, he can get credit toward the underlying sentence under DCR 285–6. *Gasque v. State*, 45 Md.App. 471, 413 A.2d 1351 (1980).

**22.** Under the facts of Redfearn's case, he was held on a Maryland warrant issued *before* his arrest in Michigan and on a warrant lodged *after*

the acquittal while still in custody. *Id.* at 1, 7–8. The distinction comes down to the difference between the terms "lodge"—which is how section 638C(a) is worded—and "issue." A warrant can only be "lodged" with a custodian when an escapee has been captured. When a warrant is "lodged," it acts as a detainer. A warrant may "issue," but it cannot "lodge" with the custodian until the escapee is again in custody. *Fleeger*, 301 Md. at 162–63, 482 A.2d at 494. Michigan authorities had a new, valid Maryland warrant with which to detain Redfearn during the pendency of the murder case, but they chose not to arraign him on it until the Michigan case was resolved. *Redfearn*, slip op. at 7–8 (D.Md. Apr. 24, 1990).

**23.** Here, petitioner was ultimately returned to Maryland on an escape-retake warrant and not on a criminal escape warrant.

petition of William Daniel Chavis for a writ of habeas corpus be granted, to the extent that Maryland authorities credit the time period from March 7, 1984 to May 23, 1985 toward his Maryland sentence and recalculate the expiration date of that sentence.