**Jerry JONES, Petitioner**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 7, 2003.
Decided Aug. 22, 2003.

---

James M. McClure, Huntingdon, for petitioner.

Arthur R. Thomas, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN, Judge, and LEAVITT, Judge.

OPINION BY JUDGE McGINLEY.

■■■ Jerry Jones (Jones) petitions for review from a final determination of the Pennsylvania Board of Probation and Parole (Board) that recommitted him to serve twelve months backtime and recalculated his maximum date as December 22, 2003.[1]

---

1. Our review is limited to determining whether the Board's findings are supported by substantial evidence, are in accordance with the law and whether constitutional rights have

Jones was effectively sentenced on July 27, 1988, to a term of two to ten years for aggravated assault.[2] On February 28, 2000, Jones was paroled to a community corrections center for a minimum of three months. On December 6, 2000, the Board issued a warrant to commit and detain Jones after the Department arrested him on December 5, 2000, and charged him with two violations of The Controlled Substance, Drug, Device, and Cosmetic Act, Act of April 14, 1972, P.L. 233, *as amended*, 35 P.S. § 780–113(a)(16). On January 18, 2001, the Board detained Jones pending the disposition of criminal charges. The Board released its warrant on January 7, 2002. Jones made bail on the new charges on January 7, 2002. On February 13, 2002, the Court of Common Pleas of Allegheny County convicted Jones and sentenced him to six to twelve months on Count 1 effective December 5, 2000, and paroled him from that sentence and sentenced him to one year of probation for Count 2 to be served consecutive to Count 1. Jones was credited with time served from December 6, 2000, to May 22, 2001. On February 13, 2002, the Board issued a warrant to commit and detain Jones.

After a revocation hearing, the Board on April 12, 2002, recommitted Jones to serve twelve months backtime as a convicted parole violator and recalculated his maximum date as December 22, 2003. On May 2, 2002, Jones petitioned for administrative relief.

In a decision mailed June 3, 2002, the Board denied Jones's request for administrative relief:

> Your original maximum expiration date of sentence was January 7, 2002. When you were paroled on February 28, 2000 there remained 1 year, 10 months and 9 days remaining on the sentence. You were arrested December 5, 2000 and did not post bail until your original maximum expiration date of sentence on January 7, 2002. You were sentenced in Allegheny County on February 13, 2002 to a term of 6 months to 12 months and were paroled February 13, 2002. Adding the 1 year, 10 months and 9 days remaining on your sentence to your availability date of February 13, 2002 results in a new maximum expiration date of December 22, 2003.

---

been violated. *Krantz v. Pennsylvania Board of Probation and Parole*, 86 Pa.Cmwlth. 38, 483 A.2d 1044 (1984). This Court will interfere with the Board's exercise of administrative discretion where it has been abused or exercised in an arbitrary or capricious manner. *Green v. Pennsylvania Board of Probation and Parole*, 664 A.2d 677 (Pa.Cmwlth. 1995).

2. Jones was released on parole on July 27, 1990. On May 14, 1992, the Board detained Jones pending the disposition of criminal charges and recommitted him to serve nine months backtime as a technical parole violator when available for multiple technical parole violations. On September 2, 1992, Jones was recommitted based on the May 14, 1992, Board action. Jones was released on parole on October 9, 1992. On August 13, 1993, the Board detained Jones pending the disposition of criminal charges after the City of Pitts-

burgh Police Department (Department) arrested him on June 21, 1993. On May 3, 1994, the Board recommitted Jones to serve six months backtime as a convicted parole violator after he was convicted of criminal trespass. The Board established a new maximum date of February 6, 2001. Jones was released on parole on August 26, 1994. On November 21, 1994, the Board declared Jones delinquent. On December 29, 1995, the Board detained Jones pending the disposition of criminal charges after the Department arrested him on July 25, 1995. On October 16, 1996, the Board recommitted Jones to serve eighteen months backtime for multiple technical parole violations and twelve months backtime to be served concurrently as a convicted parole violator following Jones's conviction for simple assault. The Board established a new maximum date of January 7, 2002.

Board Decision, June 3, 2002, at 1; Certified Record at 90.

Jones contends that the recalculated maximum date fails to accurately reflect the periods during which Jones was incarcerated and under the Board's jurisdiction. Specifically, Jones argues that he was incarcerated for one year and twenty-six days but was only sentenced to six months and should receive credit for the remaining seven months and twenty-six days.

In *Gaito v. Pennsylvania Board of Probation and Parole*, 488 Pa. 397, 412 A.2d 568 (1980), our Pennsylvania Supreme Court addressed the issue of credit for time served:

> [I]f a defendant is being held in custody *solely* because of a detainer lodged by the Board and has otherwise met the requirements for bail on the new criminal charges, the time spent in custody shall be credited against his original sentence. If a defendant, however, remains incarcerated prior to trial because he has failed to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to his new sentence. (Emphasis in original. Footnote omitted).

*Gaito*, 488 Pa. at 403–404, 412 A.2d at 571. In *Gaito*, our Pennsylvania Supreme Court also noted in a footnote, "It is clear, of course, that if a parolee is not convicted, or if no new sentence is imposed for that conviction on the new charge, the pre-trial custody time must be applied to the parolee's original sentence." *Gaito*, 488 Pa. at 404, n. 6, 412 A.2d at 571, n. 6.

This Court addressed a similar issue in *Berry v. Pennsylvania Board of Probation and Parole*, 756 A.2d 135 (Pa.Cmwlth. 2000). Anthony Berry (Berry) was originally sentenced to a term of one year six months to seven years on two counts of delivery of a controlled substance. On September 17, 1998, while on parole, Berry was arrested by the Duquesne Police Department and charged with terroristic threats, simple assault, and firearms violations.[3] That same day the Board issued a warrant to commit and detain Berry. On September 24, 1998, Berry was arrested by the Duquesne Police Department and charged with reckless driving, fleeing and eluding police and unauthorized use of a motor vehicle. The Board, by order dated January 11, 1999, recommitted Berry to serve nine months backtime as a technical parole violator when available. On July 8, 1999, Berry pled nolo contendere to the September 24, 1998, charges and was sentenced to time served plus twenty months probation. He received credit from September 24, 1998, to January 24, 1999, on his new sentence. Berry then was returned to SCI Frackville. After a hearing, the Board recommitted Berry to serve twelve months backtime as a convicted parole violator and nine months backtime as a technical parole violator, consecutively. Berry requested administrative relief and alleged that the Board failed to give him credit for time served solely under the Board's warrant from January 24, 1999, to July 8, 1999. The Board denied the request and noted that Berry did not post bail following the September 24, 1998, charges and "was not entitled to credit as he had no right to deposit the five months and fourteen days into a 'penal checking account and apply any pre-sentence custody credit in excess of his new sentence to his original sentence.'" *Berry*, 756 A.2d at 137.

---

**3.** The charges were dropped at a preliminary hearing because the alleged victim failed to appear.

Berry petitioned for review with this Court and contended that the Board erred when it did not provide him with credit from January 24, 1999, to July 8, 1999. He also argued that because his maximum term for the September 24, 1999, charges expired on January 24, 1999, any time he served subsequent to that date was served solely under the Board's warrant. This Court reviewed *Gaito* and noted an exception created by our Pennsylvania Supreme Court that *if a parolee is not convicted or if no new sentence is imposed for the conviction on new charges, then the pretrial custody time must be applied to the original sentence.*

This Court declined to extend the exception and affirmed the Board:

> In the case at bar, Petitioner [Berry] asks this Court to extend the exception such that a parolee who receives a shorter term of sentence than the period of time he is incarcerated at the time of sentencing is entitled to credit against his original sentence for this additional time. We refuse to do so. In this case, Berry pled nolo contendere to charges of reckless driving, fleeing and eluding police and driving under suspension. Hence, Berry was 'convicted' of these new charges. In addition, Berry was sentenced to time served (four months) plus twenty months probation as a result of this conviction. As Berry was 'convicted' of these new charges and a new 'sentence' was imposed, the exception as stated in *Gaito* and *Davidson* [*v. Pennsylvania Board of Probation and Parole*, 667 A.2d 1206 (Pa.Cmwlth.1995)] does not apply. Thus, we cannot say that the Board erred as a matter of law in failing to credit Berry for time served from January 24, 1999, to July 8, 1999.

*Berry*, 756 A.2d at 138.

Now, Jones argues that this Court's decision in *Williams v. Pennsylvania Board*

*of Probation and Parole*, 816 A.2d 366 (Pa.Cmwlth.2003) trumps *Berry* and controls the allocation of his pre-trial custody. In *Williams*, Thomas Williams (Williams) was sentenced to a term of five to ten years for criminal conspiracy to commit homicide. The Board granted Williams parole. One of the conditions of his parole required him to successfully complete a program at a Community Correction Center. On August 1, 1999, Williams left the Community Correction Center and did not return. The Board declared him delinquent as of that date. On October 22, 1999, Williams was arrested and charged with one third degree misdemeanor and three summary violations of the Vehicle Code, 75 Pa.C.S. §§ 101–9805. *There was no record indication whether Williams was required to post bail.* On October 28, 1999, the Board issued a warrant to commit and detain Williams for two technical parole violations that stemmed from his failure to complete the corrections program. On November 4, 1999, Williams was returned to a state correctional institution. On December 17, 1999, the Board recommitted Williams as a technical parole violator to serve twelve months backtime when available. On October 5, 2000, Williams pled guilty to driving with a suspended license, driving without required financial responsibility and unauthorized transfer or use of registration. The misdemeanor was dropped. The district justice fined Williams $200 plus costs for driving with a suspended license. As a result of the convictions, the Board conducted another violation hearing and recommitted Williams to serve nine months backtime as a technical parole violator for his failure to comply with all laws to be served concurrently with the earlier twelve month recommitment. Williams petitioned for administrative relief which the Board denied. *Williams*, 816 A.2d at 367.

Williams petitioned for review with this Court and alleged that he was entitled to

credit between October 22, 1999, the date of his arrest, and December 17, 1999, the date of the revocation of his parole. This Court agreed with Williams and reversed and remanded for a recalculation of Williams's maximum date:

> Here, credit for Williams' prison time, much of which was served in a state institution, can only be applied to his original state sentence. We hold that where prison time is not related to new charges, and cannot be credited to a new sentence, a prisoner shall be credited with prison time against his original sentence.
>
> Williams is entitled to no credit from the time he left the CCC [Community Correction Center] until his arrest on Vehicle Code charges. There is no indication that he was required to post bail for the Vehicle Code charges, but failed to do so. Therefore, there is no support for a finding that he remained in custody because of the Vehicle Code violations. Williams ultimately received only a fine for the Vehicle Code violations. As a result, there was no county sentence of confinement to which the prison time could be credited. Under these circumstances, Williams should receive credit for his prison time against his original sentence. (Citations omitted. Footnote omitted).

*Williams*, 816 A.2d at 369.

■ Jones argues that his situation is similar to Williams' because he was arrested on new criminal charges while on parole. Shortly after his arrest he was returned to a state correctional facility, where he remained incarcerated prior to his sentencing. Because his new county sentence was less than the time he spent incarcerated between the date of his arrest and the date of the revocation of his parole, Jones argues that seven months and twenty-six days were neither credited to his new sentence nor to the original sentence from which he was paroled. As Williams received credit for time spent in prison because that prison time was unrelated to new charges, and could not be credited to a new sentence, Jones asserts he is entitled to have that excess portion of the time he spent incarcerated, that was not applied to his new charges and could not be credited to his new sentence, credited against his new maximum expiration date. This Court disagrees.

■ First, both Berry and Jones were convicted parole violators while Williams was a technical parole violator. Under the act popularly known as the Parole Act (Act)[4], convicted parole violators and technical parole violators are treated differently. Section 21.1 of the Act[5], 61 P.S. § 331.21a, provides that service of the new term for a subsequent crime shall precede the commencement of the recommitment of backtime in all but two situations.[6] Here, Jones did serve his term on the new

---

4.  Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. §§ 331.1–331.34a.

5.  This section was added by the Act of August 24, 1951, P.L. 1401.

6.  Section 21.1(a) of the Act, 61 P.S. § 331.21a(a), provides in pertinent part:

    If a new sentence is imposed upon such parolee, the service of the balance of said term originally imposed shall precede the commencement of the new term imposed in the following cases:

    (1) If a person is paroled from any State penal or correctional institution under the control and supervision of the Department of Justice and the new sentence imposed upon him is to be served in any such State penal or correctional institution.

    (2) If a person is paroled from a county penal or correctional institution and the new sentence imposed upon him is to be

charges in compliance with the Act. The Act does not provide that a parolee is entitled to a "penal checking account". In contrast, Section 21.1(c) of the Act, 61 P.S. § 331.21a(c), provides in pertinent part that technical parole violators "shall be recommitted for service of the balance of said term originally imposed to penal or correctional institutions. . . ." The Act does not account for any other sentence because a technical parole violator is recommitted not because of a subsequent criminal conviction but for a violation of the conditions of parole. For example, Williams was not recommitted for his fines under the Vehicle Code. Instead, he was recommitted for his violation of the terms of his parole because he was not law abiding. Convicted and technical parole violators do not come under the same subsection of the Act. The Board properly treated Jones as a convicted parole violator just like Berry and Gaito, other convicted parole violators.

Another key difference between Jones and Berry, on the one hand, and Williams on the other is the issue of bail. Berry did not post bail on the new charges so that he

was not held in prison solely on the Board's detainer. Jones did not post bail on the new charges until the Board released its detainer on January 7, 2002. Critically, in *Williams* the record did not indicate whether Williams posted bail or was required to post bail. Under *Gaito*, if a defendant remains incarcerated prior to trial because he fails to satisfy bail requirements on the new criminal charges, then the time spent in custody shall be credited to his new sentence. Berry did not receive credit for the time spent in prison from January 24, 1999, the date for which he was given credit for time served on his new charges, and July 8, 1999, the date that he was sentenced on the new charges. Here, Jones did not receive credit from the time spent in prison from the date for which he was given credit for time served until the date when he posted bail on the new charges. The Board properly followed *Berry* and *Gaito*. Jones is not entitled to a "penal checking account." [7]

Accordingly, we affirm.[8]

served in the same county penal or correctional institution.
In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.

7. Jones asserts that the fact that he was placed in a state correctional institution rather than a county facility when he was arrested on the new charges bolsters his argument that additional credit should be applied to his original sentence. This Court has previously rejected that argument. In *Gaito v. Pennsylvania Board of Probation and Parole*, 128 Pa. Cmwlth. 253, 563 A.2d 545 (1989), *petition for allowance of appeal denied*, 525 Pa. 589, 575 A.2d 118 (1990) (*Gaito II*), Joseph Gaito (Gaito) was on parole when he was arrested for burglary. Gaito did not post bail and was confined in the State Correctional Institution at Pittsburgh. The Board lodged a detainer on April 24, 1986. On April 23, 1987, Gaito was convicted on the burglary charge and

sentenced to serve a term of one and a half to three years. Gaito argued that the time he spent in official detention at the State Correctional Institution at Pittsburgh before his sentencing should be applied to his original sentence because he was placed in the institution as a result of the Board's detainer not the new burglary charge. Gaito argued that the fact that he was incarcerated in the state prison supported his argument. This Court rejected Gaito's argument:

Time spent in custody pursuant to a detainer warrant shall be credited to a convicted parole violator's original term only when the parolee was eligible for, and had satisfied, bail requirements for the new offense and thus remained incarcerated only by reason of the detainer warrant against him. *Gaito*, 563 A.2d at 547.

8. Jones also suggests that Section 9760 of the Judicial Code, 42 Pa.C.S. § 9760, which outlines how a sentencing court credits time

## ORDER

AND NOW, this 22nd day of August, 2003, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is affirmed.

FRIEDMAN, J., dissented and filed opinion, in which SMITH-RIBNER and COHN, JJ. joined.

DISSENTING OPINION BY JUDGE FRIEDMAN.

I respectfully dissent. Jerry Jones (Jones) is a parolee who spent thirteen months in custody without posting bail awaiting disposition of new criminal charges and received a sentence of only twelve months. The majority holds that Jones is not entitled to credit on his original sentence for the extra one month of prison time that cannot be applied to his new sentence. I realize that, pursuant to *Berry v. Pennsylvania Board of Probation and Parole*, 756 A.2d 135 (Pa.Cmwlth. 2000), a parolee whose confinement awaiting disposition of new criminal charges exceeds the ultimate sentence of imprisonment on those charges is not entitled to credit against the original sentence for the additional time served. However, for the reasons that follow, I believe that *Berry* was wrongly decided and should be overruled.

## I. Statutory Authority for Credit

The statutory provisions governing prison time credit make clear that a parolee is entitled to credit against either an original sentence or a new sentence for time spent in custody awaiting disposition of new

spent in custody as a result of a criminal charge for which one is convicted, for time spent in custody for which a prisoner is later reprosecuted and resentenced, for time spent on multiple sentences where one is set aside, and for time spent after an arrest on one charge where the individual is later convicted

criminal charges. No statutory provision even remotely suggests that a parolee is not entitled to credit for such prison time.

### A. Sentencing Code

Under section 9737 of the Sentencing Code, 42 Pa.C.S. § 9737, when a parolee is convicted of new criminal charges, the court orders an "appropriate agency" to report to the court whether the parolee is entitled to credit for time spent in custody as a result of those criminal charges. After reviewing the information submitted, the court is required to give the parolee credit for "all" time spent in custody "as a result of the criminal charge for which [the] prison sentence is imposed...." Section 9760(1) of the Sentencing Code, 42 Pa.C.S. § 9760(1).

Here, Jones spent thirteen months in custody awaiting disposition of the charge that he violated section 13(a)(16) of The Controlled Substance, Drug, Device and Cosmetic (Drug Act),[1] relating to unlawful possession of a controlled substance. However, Jones received a sentence of only twelve months in prison, the maximum period of confinement allowed by law. *See* section 13(b) of the Drug Act, 35 P.S. § 780–113(b). Because Jones served one month more than the sentence of imprisonment ultimately imposed, it is not possible to give Jones credit against his new sentence for "all" the time he spent in custody. The question then is whether, under these circumstances, the Board should give Jones credit against his original sentence for the extra month that he spent in custody awaiting disposition of the new criminal charges.

on another charge arising out of the same act, supports his position. However, Section 9760 pertains to a sentencing court and not to the Board.

1. Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. § 780–113(a)(16).

## B. Parole Act

The only statutory provision restricting the Pennsylvania Board of Probation and Parole's (Board) authority to give prison time credit against an original sentence is section 21.1 of the act commonly known as the Parole Act.[2] Section 21.1 states that, when the Board discontinues a parolee's parole status and recommits the parolee as a convicted parole violator (CPV), the parolee is given "no credit for the time at liberty on parole."

Although the Board may not give a CPV credit against an original sentence for time "at liberty" on parole, the Parole Act does not prevent the Board from giving credit against an original sentence for time spent in custody awaiting disposition of new criminal charges. In fact, section 21.1 of the Parole Act suggests that the Board should give credit against an original sentence for *all* time spent *not* "at liberty" on parole.[3] Thus, in my view, section 21.1 of the Parole Act means that, unless it is possible to give a parolee credit against a new sentence under the Sentencing Code, the parolee should receive credit against the original sentence for time in custody awaiting disposition of new criminal charges.[4]

## II. Case Law

### A. The *Gaito* Rule

The general rule governing the allocation of credit for time served awaiting disposition of new criminal charges is set forth in *Gaito v. Pennsylvania Board of Probation and Parole*, 488 Pa. 397, 412 A.2d 568 (1980). If a parolee is held in custody solely because of a detainer lodged by the Board and has otherwise met the requirements for bail on new criminal charges, the time spent in custody is credited against the original sentence. If, however, a parolee remains incarcerated on new criminal charges because he failed to satisfy bail requirements on those charges, the time spent in custody is credited to the new sentence. An exception to the general rule, set forth in a footnote in *Gaito*, states: if a parolee is not convicted of the new charge, or if no new sentence is imposed for a conviction on the new charge, the pre-trial custody time is applied to the parolee's original sentence. *Id.*

I believe that the general rule in *Gaito* was intended only to address the "typical" case, where the parolee is convicted of new criminal charges and the parolee's time in custody does *not* exceed the sentence of imprisonment. In such a case, *Gaito* ensures that the parolee receives full credit for time in custody, either on the new sentence or the original sentence, but not both.

The exception in *Gaito* provides for credit on the parolee's original sentence despite the parolee's failure to satisfy bail

---

**2.** Act of August 6, 1941, P.L. 861, *added by* section 5 of the Act of August 24, 1951, P.L. 1401, *as amended*, 61 P.S. § 331.21a.

**3.** Only the Board has jurisdiction to give a CPV credit against an *original* sentence for time in custody. A trial judge, in sentencing a CPV on new criminal charges, is permitted to give credit against a *new* sentence for time in custody. However, in no event may a CPV receive credit on both the old and new sentence for the same time in custody.

**4.** *Cf. Williams v. Pennsylvania Board of Probation and Parole*, 816 A.2d 366 (Pa.Cmwlth. 2003) (stating that, where a parolee's prison time cannot be credited to a new sentence, the prison time should be credited to the original sentence; otherwise, there would be an unjustifiable total loss of credit for prison time).

requirements (1) when the parolee is not convicted or (2) when the parolee is convicted but receives no new sentence. Like the general rule, the exception ensures that a parolee receives full credit for time in custody. The exception shows that the court in *Gaito* did not intend that the general rule should be applied when it would deprive a parolee of credit for time in custody.

Here, Jones spent thirteen months in prison without satisfying bail requirements. Under the general rule in *Gaito*, the thirteen months is credited to Jones' new twelve-month sentence. However, it is impossible to credit the entire thirteen months to the twelve-month sentence. In order to ensure that Jones receives full credit for his time in custody, which I believe to be the aim of *Gaito* and the Parole Act, I would direct the Board to give Jones credit on his original sentence for the extra one month that he spent in custody.[5]

### B.  Pre-*Gaito* Case Law

A review of certain cases pre-dating *Gaito* that provide background for the *Gaito* rule make apparent that, as the rule evolved in this court, it was never suggested that the Board should give a parolee anything less than full credit for time in custody.

### 1.  Superior Court's *Bigley* Opinion

In *Commonwealth v. Bigley*, 231 Pa.Super. 492, 331 A.2d 802, 804 n. 5 (1974) (emphasis added), our superior court stated:

> Whether the time [a parolee] spent between arrest and sentencing is treated as time spent awaiting trial on the new charges or as time spent awaiting final commitment as a parole violator, [the parolee] is *entitled to credit for this time towards either the old sentence or the new sentence, but not towards both.*

Thus, if a parolee spent thirteen months in jail between arrest and sentencing and received a sentence of only twelve months, as in this case, the parolee would receive twelve months credit on the new sentence and one month credit on the original sentence.

The court in *Bigley* also held that the Board has authority to determine whether credit is to be given to the original sentence or the new sentence. *See Bigley* (relying on section 17 of the Parole Act, 61 P.S. § 331.17, which gives the Board "exclusive power" to recommit parolees). After *Bigley*, the Board took the position that it had absolute discretion to credit a parolee's confinement between arrest and sentencing to either the old sentence or the new sentence. *See Mitchell v. Board of Probation and Parole*, 31 Pa.Cmwlth. 243, 375 A.2d 902 (1977), *aff'd*, 491 Pa. 291, 420 A.2d 1324 (1980).

### 2.  *Padgett* and *Mitchell*

In *Padgett v. Board of Probation and Parole*, 30 Pa.Cmwlth. 221, 373 A.2d 467 (1977), this court began to restrict the Board's discretion in allocating credit for time in custody. In *Padgett*, a parolee was arrested on July 9, 1975, and was charged with new criminal offenses. The Board issued a warrant that same day, but the Board lifted the warrant on October 27, 1975. The parolee did not post bail until December 23, 1975. The Board credited

---

5.  In *Berry,* the parolee asked this court to extend the exception in *Gaito* so that a parolee who received a sentence shorter than his period of incarceration would receive credit against his original sentence for the additional time. Without any discussion of the propriety of such an exception, this court simply stated, "We refuse to do so." *Berry,* 756 A.2d at 138.

the parolee's *new* sentence for the time spent in custody from July 9, 1975, until October 27, 1975. This court reversed. In doing so, we stated that, because of the Board warrant, the parolee was in the Board's custody from July 9, 1975, until October 27, 1975. Thus, that prison time could be credited only to the *original* sentence.[6] *Padgett.*

In *Mitchell,* decided a few months after *Padgett,* the Board argued pursuant to *Bigley* that, when the Board lodges a detainer against a parolee who has been arrested on new charges, the Board has discretion to give credit following conviction to either the old sentence or the new sentence. This court made the following statement:

> [O]nce the Board ... lodges its detainer or causes a parolee to be arrested on its warrant, a parolee is in the custody of the Board and is no longer incarcerated "for the offense or offenses for which such sentence is imposed".... The Board, not being compelled to lodge a detainer against a prisoner who will remain incarcerated in any event, must abide by the consequences of its election to do so.
>
> We recognize that this holding puts us in direct conflict with the position adopted by the Superior Court in [*Bigley*] that Section 17 of the [Parole] Act, 61 P.S. § 331.17, placing exclusive discretionary power in the Board to recommit parole violators, extends this far. This section ... does not grant to the

Board authority to deny a prisoner credit for time incarcerated while in the Board's custody subject to its detainer or warrant.

*Mitchell,* 375 A.2d at 905. Thus, *Padgett* and *Mitchell* limited the Board's discretion in allocating prison time credit whenever the Board issued a warrant.[7] This court did not believe that the parolee's failure to post bail delayed the efficacy of a Board warrant; the Board's detainer had an immediate effect.[8]

### 3. *Davis*

In *Davis v. Cuyler,* 38 Pa.Cmwlth. 488, 394 A.2d 647 (1978), this court reconsidered *Mitchell.* The parolee in *Davis* was arrested on May 20, 1976, and the Board issued a warrant on May 28, 1976. The parolee was convicted and was sentenced on September 7, 1977. In imposing the sentence, the trial court gave the parolee credit on his *new* sentence for the time he served from May 20, 1976, to September 7, 1977. The Board, however, ignored the trial court's allocation of credit based on *Mitchell* and gave the parolee credit on his *original* sentence for that period of time.

Ignoring *Padgett* and focusing on *Mitchell,* this court pointed out that, in *Mitchell,* the parolee posted bail after the Board lodged its detainer, and, thus, the parolee would have been released but for the Board's detainer. In other words, once the parolee satisfied the bail requirements, the Board's detainer was the *sole reason* for the parolee's continued confinement.

---

**6.** Obviously, this court's analysis in *Padgett* is contrary to *Gaito.* Because the parolee in *Padgett* did not post bail until December 23, 1975, *Gaito* would require that the time served from July 9, 1975, until October 27, 1975, could be credited only to the *new* sentence.

**7.** Presumably, when the Board did *not* issue a warrant, the Board still had discretion under *Bigley* to give prison time credit to either the

old sentence or the new sentence, but not to both.

**8.** I note that, in this case, the Board issued a warrant to detain Jones at the beginning of Jones' thirteen months in custody. Under *Padgett* and *Mitchell,* the Board would be required to credit Jones' original sentence with the *entire* thirteen months.

Having made this observation, this court modified its holding in *Mitchell* to mean that where the Board's detainer is the *sole reason* for the parolee's confinement, the Board must apply the time in confinement to the original sentence.[9] *Davis.*

In *Gaito,* our supreme court indirectly adopted the *Davis* rationale.[10] In doing so, our supreme court recognized that this court had established two lines of cases, one based on *Mitchell,* before it was modified, and one based on *Davis.* The underlying issue in *Gaito,* then, was whether this court was correct in *Padgett* and *Mitchell* that the Board, by lodging a warrant against a parolee who had not posted bail on new criminal charges, gained immediate control over the parolee. Of course, the court decided that a Board detainer did not have immediate effect where the parolee failed to post bail. In reaching this result, the court never entertained the notion that, in applying the rule that was adopted, a parolee might not receive full credit for time in custody.

## III. Credit Statutes and "Dead Time"

One of the purposes of a credit statute is the elimination of "dead time," which is time that a person spends in custody that will not be credited to any valid sentence. *Chavis v. Smith,* 834 F.Supp. 153, 159 (D.Md.1993). By enacting a credit statute, the legislature seeks to ensure that a defendant receives as much credit as possible for time spent in custody as is consistent with constitutional and practical considerations. *Id.* A credit statute can create a liberty interest that is protected by the United States Constitution. *Id.*

Here, section 9760 of the Sentencing Code and section 21.1 of the Parole Act are credit statutes. To the extent that the holding in *Gaito* is an expression of the legislative intent expressed in those credit statutes, I submit that the application of *Gaito* requires that a parolee receive as much credit as possible for time in custody awaiting disposition of new criminal charges, thereby minimizing "dead time."

## IV. Penal Checking Account

The majority indicates that this court has rejected "penal checking accounts" for parolees. (Majority op. at 166–67.) The "penal checking account" concept was first introduced in the case of *United States ex rel. Smith v. Rundle,* 285 F.Supp. 965 (E.D.Pa.1968). In *Rundle,* an inmate sought credit against his present sentence for time he served under an invalid sentence. The court denied the inmate credit because, if there were "penal checking accounts," a person could serve several years in prison under an invalid sentence and could seek to apply that prison time to a crime that he has not yet committed. *Id.* I agree that this type of "penal checking account" is improper. However, there is no such "penal checking account" in this case.

Whenever a parolee seeks credit against his original sentence for time in custody awaiting the disposition of new criminal charges, there is *always* an *existing* sentence to credit. This is *not* a situation where the parolee seeks to have the prison time credited to some future crime. A sentence already has been imposed, and it has not yet been served fully. Given that context, if a parolee is in prison awaiting the disposition of new charges and that

---

**9.** I note that, in *Padgett,* the parolee had *not* posted bail after the Board lodged its detainer and, therefore, would *not* have been released.

**10.** This court relied on *Davis* in *Rodriques v. Pennsylvania Board of Probation and Parole,* 44 Pa.Cmwlth. 68, 403 A.2d 184 (1979), and, in *Gaito,* our supreme court adopted the rationale set forth in *Rodriques.*

prison time cannot be applied to the new sentence ultimately imposed, the parolee should receive credit on the original sentence.

### V. Equity

In *Davidson v. Pennsylvania Board of Probation and Parole,* 667 A.2d 1206 (Pa. Cmwlth.1995), this court stated that the exception to the general rule in *Gaito* is based in equity. Equity requires the administration of justice according to principles of fairness, justness and right dealing.[11] It is not fair or just to deny credit to a parolee for prison time when the parolee has a sentence that could be credited. To deprive the parolee of liberty under such circumstances fails to give due accord to the sanctity of liberty and trivializes the protection of liberty afforded by law.

### VI. Equal Protection

#### A. Parolee and Non-parolee

Some might argue that Jones should *not* receive the one month credit against his original sentence because a non-parolee, who has no original sentence to credit, would not receive such credit. However, it is not fair that *anyone*, parolee or non-parolee, spend thirteen months in prison when the ultimate sentence is only twelve months. It makes no sense not to rectify the wrong for parolees simply because we are unable to rectify the wrong for non-parolees.

#### B. Indigent and Non-indigent

The right to credit for time in custody awaiting trial on a bailable offense is a constitutional right protected by the equal protection clause. *Nelson v. United States,* 402 U.S. 1006, 91 S.Ct. 2193, 29 L.Ed.2d 428 (1971); *Gaines v. United States,* 402 U.S. 1006, 91 S.Ct. 2195, 29

L.Ed.2d 428 (1971); *Durkin v. Davis,* 538 F.2d 1037 (4th Cir.1976). Courts may not refuse to grant a person credit for time served where bail was set and the defendant was unable to raise it due to lack of wealth. *Kincade v. Levi,* 442 F.Supp. 51 (M.D.Pa.1977). Such refusal constitutes unequal treatment between one unable to make bail and one who can make bail. *Durkin.*

Here, Jones filed a petition to proceed *in forma pauperis* with this court. Thus, it is likely that Jones failed to satisfy bail requirements due to indigency. The majority's view is that, under the Parole Act, Jones would have been entitled to full credit, on his original sentence, for time in custody *if* he had posted bail. Because Jones did *not* post bail, Jones is not entitled to full credit. When we interpret a statute, we presume that the legislature does not intend to violate the United States or Pennsylvania Constitutions. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3).

For the reasons stated above, I would overrule *Berry* and reverse the Board's failure to give Jones one month credit on his original sentence.

Judges SMITH–RIBNER and COHN join in this dissent.

---

11. *See* Black's Law Dictionary 540 (6th ed.1990).