**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DEBORAH FUNK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VIOLA E. EMPFIELD, DONNA L. | : | |
| YATSKO AND DIANE M. GREENE | : | |
| | : | No. 1428 WDA 2023 |
| Appellants | : | |

Appeal from the Judgment Entered November 29, 2023
In the Court of Common Pleas of Indiana County Civil Division at No(s):
11060 CD 2019

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: September 4, 2024**

Viola E. Empfield, Donna L. Yatsko, and Diane M. Greene (collectively, "Empfield") appeal from the order entered in this partition action. Empfield argues the trial court erred in not awarding the parties purparts of equal value or, in the alternative, in not awarding an owelty. We affirm.

Debra Funk commenced this action for partition in June 2019. Funk sought to have the court order partition of an approximately 54.04 acre tract of land located in Cherryhill Township, Indiana County, Pennsylvania ("Property"). In September 2019, the trial court found partition was an appropriate remedy and appointed a Master in Partition.

Following a hearing, the Master made the following findings of fact:

> 1. [Funk] commenced this action on June 24, 2019 against [Empfield] seeking to have the Court order the partition of [the Property].

2. The Property, then consisting of 56 acres, was originally owned in its entirety by Clarence H. Empfield and Viola E. Empfield (Defendant), who are the parents of Funk (Plaintiff), Yatsko (Defendant) and Greene (Defendant).

3. As of 2010, the Property contained a single residence on the eastern side of the Property where [Viola] Empfield presently resides (the "Empfield House"), several barns and utility structures, and a campground. In addition, a sizeable portion of the Property was used as tillable land and leased to a local farmer for growing crops.

4. On August 5, 2011, [Funk] was conveyed a 50% interest in the Property by way of a deed from her parents. By virtue of this deed, Funk and her parents took title to the Property as joint tenants with the right of survivorship.

5. In March 2013, approximately 1.96 acres of the Property was conveyed to Jacob and Wendy Williams, leaving the residual of the subject Property at its present size of 54.04 acres.

6. By deed dated December 1, 2015, [Viola] Empfield acquired the interest of her husband, Clarence H. Empfield, thereby making herself and Funk the sole owners of the Property at the time, each with a 50% interest of the whole Property as joint tenants with right of survivorship.

7. In approximately 2011-2012, Funk and her husband, Kenneth Funk, began construction of a sizeable home at their own sole expense on the western side of the Property (the "Funk House").

8. [Empfield] has not contributed financially or otherwise to the construction or the maintenance of the Funk House.

9. [Funk] contributed to the maintenance of the Property, such as repairing and maintaining the barns and sheds. [Empfield] contributed to the maintenance of the Property, such as roof, furnace and garage expenditures.

10. The parties stipulated that they equally shared in the real estate tax obligations of the Property.

11. By deed dated May 9, 2018, [Viola] Empfield transferred her one-half interest in the Property to herself and two of

her daughters (the other two defendants) as joint tenants with right of survivorship.

12. The present ownership of the Property is the following:

• [Funk] - 50% interest in the whole as a joint tenant with the right of survivorship.

• [Empfield] - 50% interest as joint tenants with the right of survivorship among themselves, and as a joint tenant with the right of survivorship of the whole Property with [Funk].

13. The primary physical change that has occurred at the Property since 2011 is the construction of the Funk House and garage on the western half of the Property. Otherwise, the Property has remained largely unchanged since Funk acquired her 50% interest in the Property in 2011.

14. Richard J. Johnston, of Lafferty Real Estate Appraisals, LLC, a real estate expert called by the Master testified that the value of the Property, using a comparative-sales approach, and dividing the Property into two nearly equal parcels is $245,000 for the eastern part (631 Sportsman Road, including the Empfield House) and $350,000 for the western part (633 Sportsman Road, including the Funk House).

15. Ginger L. Jakubowski, of Ginger Jakubowski Appraisals, a real estate expert called by [Funk], testified that the value of the undivided Property, using a cost approach, is $807,000.

16. There are no mortgages, liens or other encumbrances which effect the whole or any part of the Property.

Report of the Master in Partition, filed Aug. 6, 2021, at 2-3 (footnote omitted).

To this, we add that when Johnston was asked whether it would be possible to equalize the monetary value of the properties, he testified that he did not think so except to possibly give the new home three acres of land and no out buildings:

> [I] don't think it would be. [I] don't think that unless you gave that new home maybe on three acres of land and with no out buildings, but it would you know, there's a significant difference in homes. There's a brand new one with a lot of square footage and you have an older home built in '68. But unless to do it if you get a number, divide it by two, and make it equal, that new home should probably only be on a couple acres of land without the out buildings.

N.T., Mar. 16, 2021, at 52 (dashes removed). He said that such a division "possibly" would result in each purpart having an equal monetary value. *Id.*

The Master found the Property was capable of division without prejudice to or spoiling of the whole, noting the Property appeared to have greater value as two parcels because there were two residential dwellings on the Property. Report of Master at 4 (unpaginated). The Master "believe[d] that the land c[ould] be divided into two parcels (equal to the number of parties) that, considering the equities of this case, may not be exactly of equal value but that preserves the overall value of the whole while being fair to the parties." *Id.* at 5.

The Master recommended the partition divide the Property such that Funk will have more acreage than Empfield, reasoning "an exact 50/50 split of the acreage does not make practical or economic sense." *Id.* at 10. The Master included a drawing that approximated the location of a boundary line between the parcels, stating that if the trial court accepted his recommended approach, the court should allow the parties to have input in the exact location of the boundary line before approving the subdivision. *Id.* The Master noted

that his approximation gave "each party a house, a driveway, at least one barn and some farmable acreage." *Id.*

The Master found Funk was not entitled to reimbursement or owelty due to her construction of the new home on the Property. The Master accepted Johnston's valuations. He valued the purpart that would be awarded to Funk at $350,000 and the purpart that would be awarded Empfield at $245,000. He then found that, considering the equities of the case, he did not believe owelty to Empfield was "required to fairly divide the Property between the parties." *Id.* at 12. He noted that "[e]ach party will receive the property they improved," and reasoning "[t]he law and equity balance out the value that each party will realize by the Partition." *Id.*

The Master recommended "awarding [Funk] the western portion and [Empfield] the eastern portion . . . provided that the parties shall have input into the exact final location of the borderline before the final subdivision is approved by the proper governmental agencies." *Id.*

The trial court adopted the Master's recommendations and ordered the Master to obtain a survey setting the boundary and prepare appropriate deeds:

> The Master shall employ a surveyor, at the expense of the parties, to obtain subdivision approval, provided that the parties may have involvement in determining the exact final location of the boundary line by providing input to the Master before a final subdivision is approved by the proper governmental agencies; after which, the Master shall prepare and record the deeds partitioning the Property in conformity with the subdivision approval, and shall include in the deeds provisions for the easements and the

maintenance agreements needed to describe and define the permitted uses of the common facilities the parties will share, such as the driveway, and possibly the spring, if the party whose land does not include the spring elects to have access to the spring, or access to the spring is necessary to obtain subdivision approval.

Order, filed Sept. 22, 2021, at ¶ 2; *see also* Order, filed Aug. 10, 2021, at ¶ 2.

Both parties filed Exceptions to the order, and the trial court denied them. Empfield appealed, and this Court quashed, finding the order was not final. *Funk v. Empfield*, 281 A.3d 315 (Pa.Super. 2022). On remand, the Master filed a Supplemental Report and Recommendation, which recommended the court accept a subdivision prepared by a surveyor. The trial court accepted the Master's Report and Recommendation in December 2022. Funk filed Exceptions, which the trial court denied. The court directed the Master to obtain subdivision approval and submit a final proposed order incorporating the Master's Recommendations. In July 2023, the court adopted the Master's Recommendations. Both parties filed motions for post-trial relief, which the trial court denied. Empfield filed a timely notice of appeal.

Empfield raises the following issues:

1. Did the Trial Court err when it affirmed the Master's recommendation to divide the Property into two purparts of equal size but materially unequal value and awarded them to the respective parties when the facts of record accepted by the Master showed that it was possible to divide the Property into two purparts of equal value that could then be awarded to the respective parties?

2. Did the Trial Court err when it affirmed the Master's recommendation to divide the Property into two purparts of equal size but materially unequal value and award them to

- 6 -

the respective parties without any award of owelty to account for the materially different values?

Empfield's Br. at 10.

We first must determine whether Empfield waived her issues when she failed to file exceptions to the Master's supplemental report and recommendation. We conclude she did not.

Funk cites the comments to Rule 227.1,[1] noting a party must file exceptions to the Master's report in a partition action and claims that, because Empfield did not file exceptions to the supplemental report, she waived the claims raised on appeal. Here, Empfield raised the current issues in the Exceptions she filed to the September 2021 Master Report and in her post-trial motions, and the trial court addressed the exceptions. The supplemental report did not impact the Master's prior recommendations, as it only determined the exact placement of the boundary such that the prior recommendations would come to fruition. We decline to find waiver under these facts. *Cf. Newman Dev. Group of Pottstown, LLC v. Genuardi's*

_____

[1] Rule 227.1 governs post-trial relief. The comments state that:

> The term "exceptions" is used in the rules in contexts other than post-trial practice. No amendment is made to rules using the term in such other contexts. Thus under Rule 227, a party need not take "exception" to any ruling of the trial judge. A party must still file ''exceptions" to an auditor's report under Rule 1530, a master's report under Partition Rule 1569, a hearing officer's report under Support Rule 1910.12, a master's report under Divorce Rule 1920.55 and a schedule of distribution under Execution Rule 3136.

Pa.R.Civ.P. 227.1, comment.

*Family Mkts., Inc.*, 52 A.3d 1233, 1251 (Pa. 2012) (party need not refile post-trial motions on remand where new trial does not occur). We therefore will address Empfield's claims.

We will address Empfield's claims together. Empfield first argues that under the Pennsylvania Rules of Civil Procedure, if a court can divide the property into purparts without spoiling the whole, and award the purparts to the parties in their respective interests, it must do so. She claims the Master accepted the testimony of the appraiser who said it would be possible to divide the property into two purparts of equal value, but recommended that the property be divided into two purparts of unequal value. She claims the Master did this because he failed to understand the "proper procedure in partition actions" and "improperly [gave] credit to [Funk] for building a house on the property when the case law specifically directs otherwise." Empfield's Br. at 21. Empfield argues that if a court determined the property can be divided, it must be divided into as many purparts as there are parties entitled thereto, with the purparts being proportionate in value to the parties' interests. She argues that only if this is not possible should other divisions be considered. She argues that the Master determined that the Property was capable of being divided without spoiling the whole and claims the appraiser testified it was possible to divide the Property into two purparts of equal value. She claims the Master was required to recommend this equal division.

Empfield argues the Master's reasoning for dividing the Property equally based on acreage—that Funk put substantial improvements on the Property—

was flawed. Empfield argues it was flawed because it violates Rule 1560's requirement that purparts be proportionate in value to the interests of the parties and because it contravenes case law that holds co-tenants cannot compel fellow co-tenants to compensate for unnecessary improvements. Empfield points out that the Master found that Funk was not entitled to reimbursement or owelty based on her construction of the Funk house.

She claims that the Master's later award of the greater-valued purpart of the Property, without any owelty to Empfield, did in equity what could not be done in law. She argues, "[E]quity is not a license to ignore and act in direct opposition to established case law and applicable rules as the Master did." *Id.* at 31. Empfield further argues that the result was not equitable, as Funk received her interest in the Property for a total consideration of $15,000, which was less than fair-market value and did not ask consent or input on the house construction. Empfield claims that, based on the facts, awarding Funk her house with some acreage around it, as would happen if purparts were based on value, would have been what the parties expected and equitable.

Empfield next argues that, if this Court affirms the division of the property into two purparts of unequal value, then it should find the court erred in failing to award Empfield an owelty award in the amount of $52,500.

"Pennsylvania Rules of Civil Procedure 1551 – 1574 split a partition action into two, distinct, chronological parts. Rules 1551 – 1557 govern Part 1, and Rules 1558 – 1574 govern Part 2. Each part, by rule, must produce its own, distinct, appealable order." *Kapcsos v. Benshoff*, 194 A.3d 139, 141

- 9 -

(Pa.Super. 2018) (*en banc*). Here, the parties do not challenge the court's first order, which directed partition of the parties' legal interests into severalty. Rather, Empfield challenges the order under Part 2, which determined how the Property would be partitioned.

Rule 1560 provides:

> If division can be made without prejudice to or spoiling the whole, the property shall be divided as follows:
>
> (a) into as many purparts as there are parties entitled thereto, the purparts being proportionate in value to the interests of the parties;
>
> (b) if it cannot be divided as provided in Subdivision (a), then into as many purparts as there are parties entitled thereto, without regard to proportionate value;
>
> (c) if it cannot be divided as provided in Subdivisions (a) or (b), then into such number of purparts as shall be most advantageous and convenient without regard to the number of parties.

Pa.R.Civ.P. 1560. Under Rule 1562, "[P]roperty not capable of division under Rule 1560(a) but capable of division under Rule 1560(b) or (c), shall be awarded equitably among the parties with appropriate provisions for owelty." Pa.R.Civ.P. 1562. Owelty is "the amount necessary to effectuate an equal division." **Bernstein v. Sherman**, 902 A.2d 1276, 1279 (Pa.Super. 2006).

Rule 1570 provides that a decision for partition shall include findings of fact for certain elements:

> (a) The decision shall include findings of fact as follows:
>
> (1) whether the property is capable of division, without prejudice to or spoiling the whole, into purparts proportionate in value to the interests of the co-tenants;

- 10 -

(2) the number of purparts into which the property can be most advantageously divided, if partition proportionate in value to the interests of the parties cannot be made;

(3) the value of the entire property and of the purparts;

(4) the mortgages, liens and other encumbrances or charges which affect the whole or any part of the property and the amount due thereon;

(5) the credit which should be allowed or the charge which should be made, in favor of or against any party because of use and occupancy of the property, taxes, rents or other amounts paid, services rendered, liabilities incurred or benefits derived in connection therewith or therefrom;

(6) whether the interests of persons who have not appeared in the action, or of defendants who have elected to retain their shares together shall remain undivided;

(7) whether the parties have accepted or rejected the allocation of the purparts or bid therefor at private sale confined to the parties; and

(8) whether a sale of the property or any purpart not confined to the parties is required and if so, whether a private or public sale will in its opinion yield the better price.

Pa.R.Civ.P. 1570.

The determination under Rule 1570 is "purely an equitable proceeding where the trial judge or master balances the equities to decide what form the partitioning will take." *Kapcsos*, 194 A.3d at 142-43. As this Cout has stated, "If the property were a pie, the trial court must decide how best to serve it to the parties." *Id.* at 143. A trial court may "determine that the pie should be cut into several pieces and award the pieces of property to the parties as their

- 11 -

severally owned parcels (i.e., 'purparts') of land." ***Id.*** (emphasis removed); ***see*** Pa.R.Civ.P. 1560. A court typically finds this proper where "the pie is so large and the parties so few in number that everyone can receive a fairly sizable and valuable piece." ***Kapcsos***, 194 A.3d at 143. A "court determines the size and location of each party's parcel based upon the parties' interests and what the court deems to be equitable given the facts and circumstances of the case." ***Id.***

"When reviewing an equitable decree, our standard of review is limited." ***Nebesho v. Brown***, 846 A.2d 721, 725 (Pa.Super. 2004) (internal quotation marks omitted). This Court "will reverse only where the trial court was palpably erroneous, misapplied the law or committed a manifest abuse of discretion. Where there are any apparently reasonable grounds for the trial court's decision, we must affirm it." ***Id.***

Here, the Master considered the Rule 1570 factors. It found the Property was capable of division without prejudice to or spoiling of the whole, and that the Property appeared to have greater value as two parcels. He concluded:

> [T]wo purparts can be proportionate in value to the parties' interest, without drawing the boundary line so as to give each party equal acreage. Dividing the land so that each parcel has one house and some acreage can equitably divide the value of the two separate parcels. In an equal division of acreage, the western side of the Property (that includes the Funk House) would have a greater value than the eastern side (that includes the Empfield House). The land has been farmed in two distinct patterns, has wooded areas, some road frontage, a parcel subdivided to a third-party (out sale) unrelated to this action and other unique qualities that factor in to where the boundary line should be drawn.

Report of the Master at 4. He next concluded he believed the land could be divided into two parcels that, "considering the equities of this case, may not be exactly of equal value but that preserves the overall value of the whole while being fair to the parties." *Id.* at 5. He pointed out that Johnston testified that he could not determine a fair market value for the sale of the single parcel, with two residential dwellings, because there were no comparable sales. *Id.* Instead, Johnston valued the purparts as $350,000 for the western side and $245,000 for the eastern side, for a total together of $595,000. *Id.* The Master accepted Johnston's values. The Master pointed out there were no mortgages, liens, or other encumbrances on the Property. *Id.* The Master further found the parties did not request division of gas, coal, or mineral rights so that each would continue to own an undivided one-half interest in such rights. *Id.* at 5-6.

The Master next addressed whether credit should be allowed or charge made in favor of either party, finding it the "most vexing" issue. *Id.* at 6. He pointed out that the Funk House on the western side of the property added more value than the existing Empfield farmhouse on the eastern side and was the primary reason for the valuation difference. He found "[c]learly [Funk] added substantial value to the Property after she acquired her one-half interest." *Id.* He noted that a tenant in common cannot claim reimbursement for new structures erected on common property without consent of the cotenants. *Id.* at 6 (citing *Cobbett v. Gallagher*, 13 A.2d 403 (Pa. 1940)). He concluded that Funk was not entitled to recover for the new structures

erected on the property. *Id.* He noted that although "[Empfield] knew that [Funk] was building a house, there was no evidence that [Empfield] was asked to consent to the construction, had input into the size or cost of the house and agreed to contribute to the building costs." *Id.* at 7. The Master found that the house Funk "built on the Property is not an improvement for which [Funk] is entitled to reimbursement or owelty." *Id.* at 7.[2]

In discussing whether a sale of the Property would be required, the Master stated he did not find it necessary, as his opinion was the Property could be divided fairly without exposing the Property or any purpart to sale. *Id.* at 9. The Master next described where the division line should start and end, noted the subdivision should include easements for the shared areas of the driveway and use of the spring that provides water to the houses and maintenance agreements for common facilities. He noted that the division would be equitably close to giving each party one half of the land, a house, a driveway, at least one barn and some farmable acreage. He then stated:

> Mr. [Johnston's] appraisal states that the eastern side of the Property (the part the Master would award to [Empfield]) is valued at $245,000.00, while the western side of the Property (the part the Master would award to [Funk]) is valued at $350,000.00; the difference in value other than land/acreage (that Mr. Johnston divided nearly equally) is $105,000 in favor of [Funk's] land. Without considering

_____

[2] The Master made other findings regarding this factor, which are not relevant to our analysis. He further found there were no known parties who had not appeared who had an interest in the Property and that the parties had not agreed on a method for dividing the property and had not requested a private sale.

reimbursement of expenses, [Funk] would owe [Empfield] $52,000 for an equal division.

As indicated above, the Master finds the decision about owelty and reimbursable contributions more easily discernable than considering the equities in this case.

Partition is an equitable remedy, ***Marchetti v. Karpowich***, 667 A.2d 724, 727 (Pa. Super. 1995), and equity requires the administration of justice according to principles of fairness, justness and right dealing. ***Jones v. Pennsylvania Bd. of Prob. & Parole***, 831 A.2d 162, 174 (Pa.Commw. Ct. 2003). The separate concurrent Partition actions at law or in equity were abolished. Pa.R.Civ.P. 1001. The Rules of Civil Procedure unite the legal action and the equitable action in the court of common pleas into a single civil action. Pa. R. Civ. P. 1551. Equity was so superior a remedy under the prior practice that actions at law for partition were a rarity. The flexibility of equity permitted the court to facilitate a fair result.

While new structures built without consent are not reimbursable (see above), equity and commonsense cannot let the Master ignore that [Funk] put substantial money into building a house, and made other improvements on the Property, that significantly enhanced the land's value. Neither party had an expectation that [Funk] would live in the Empfield House; [Funk] intended to build a house of her own. So, while [Empfield] did not give consent to the building of the Funk House, it was known that a house was intended and knowledge of the construction was very apparent to [Empfield].

On the other hand, equity must consider that [Funk] received her one-half interest in the Property either as a gift from her parents (her mother is one of the defendants) or by paying $15,000.00 to her parents (as discussed at the hearing), an amount that did not represent one-half of the fair market value of the land even with only one house on the land (still a substantial gift). The transfer also included a "right of survivorship", so eventually the land could have all passed to [Funk], or could have reverted back to [Empfield]. The gift appears to have been motivated by the parent's desire to have one of their children interested in keeping the family farm intact and living close to her

- 15 -

parents. Unfortunately, the rift in the family has caused [Funk] to build elsewhere and may mean she will likely sell her interest in the partitioned Property.

In the end, the Master does not believe that owelty is required to fairly divide the Property between the parties, if the division recommended by the Master is adopted by the Court. Each party will receive the property they improved. [Funk's] calculation showed that the differences in maintenance credits were minimal (without the springhouse work that [Empfield] did not claim). The law and equity balance out the value that each party will realize by the Partition.

*Id.* at 11-12.

The trial court concluded the recommended partition was based on the equities in the case:

This Court has reviewed the Report of the Master. This Court finds that the Master conducted a detailed analysis under Rule 1570(a). Included in this analysis, is consideration of any credits or contribution requests. Specifically, the Master addressed the differences in the valuation of the properties. "The Funk House (on the western side of the property) was built after the Property was made joint and adds more value to the Property than the existing farmhouse on the eastern side. This is the primary reason for the valuation difference in the two parcels . . ." As noted above, [p]artition is equitable in nature. The Master in support of his recommendation stated as follows "[w]hile new structures built without the consent are not reimbursable, equity and common sense cannot let the Master ignore that the Plaintiff put substantial money into building a house, and made other improvements on the Property, that significantly enhanced the land's value." As such, this Court finds that the allocation as recommended does not include a "contribution" amount, but is based on a consideration of the equities.

Trial Court Opinion, Sept. 22, 2021, at 4-5.

We conclude the court did not abuse its discretion. As we stated in **Kapcsos**, a "court determines the size and location of each party's parcel based upon the parties' interests and what the court deems to be equitable given the facts and circumstances of the case." 194 A.3d at 143. Here, the court reviewed the facts and circumstances of the case and determined that division into purparts of almost equal acreage, but not equal in value, was the most equitable solution in this matter. This was not palpably erroneous and the court did not misapply the law or commit a manifest abuse of discretion.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 9/4/2024